NOVAMETRIX MEDICAL SYSTEMS, INC. *v.*
THE BOC GROUP, INC.
(14467)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and F. X. HENNESSY, Js.

Argued September 24—decision released December 22, 1992

*John M. Calimafde,* pro hac vice, with whom were *William H. Narwold* and, on the brief, *Lee A. Goldberg,* pro hac vice, and *Maurice K. Segall,* for the appellant (plaintiff).

*Keith V. Rockey,* pro hac vice, with whom were *Alison L. Bonds* and, on the brief, *Thomas C. Elliott, Jr.,* pro hac vice, for the appellee (defendant).

NORCOTT, J. The sole issue in this appeal is whether the return of a nonrefundable payment made under a licensing agreement negotiated after a finding of patent infringement is required if the finding of infringement is later reversed, thereby obviating the need for the licensing agreement. The plaintiff, Novametrix Medical Systems, Inc., brought suit against the defendant, The BOC Group, Inc., to recover a $400,000 payment made to the defendant under a licensing agreement between the parties. The trial court granted the defendant's motion to strike the complaint on the ground that the complaint failed to allege a cause of action for breach of contract to justify return of the payment.[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The relevant facts are as follows. The plaintiff is in the business of manufacturing and selling medical

---

[1] The trial court also granted the motion to strike the second count of the complaint alleging mutual mistake as a ground for rescission of the contract. The plaintiff has pursued this appeal only as to the first count of the complaint.

monitoring equipment. Its principal product is the oximeter, which detects and measures the oxygen content in blood. The defendant, through one of its divisions, manufactures and sells life support and critical care equipment, including a line of oximeters that is in competition with those sold by the plaintiff. The oximeter manufactured by the defendant has been protected under United States Patent No. 4,407,290 since October, 1983.[2]

In June, 1986, the defendant filed a patent infringement action against the plaintiff in federal court seeking to prevent the plaintiff from manufacturing and selling oximeters that came within the scope of the defendant's patent. In April, 1989, the federal District Court issued a memorandum of decision finding the defendant's patent valid, enforceable and infringed by the manufacture and sale of the plaintiff's oximeter. *BOC Group, Inc.* v. *Novametrix Medical Systems, Inc.,* 11 U.S.P.Q.2d 1853, 1859–60 (D. Conn. 1989). By virtue of the District Court's decision, the defendant obtained a legal right to have the court issue a permanent injunction against the plaintiff to prevent the plaintiff from continuing to manufacture and sell the oximeter. In the decision, the District Court directed the parties to "file an agreed form of judgment consistent with [its] ruling within thirty days." Id., 1860.

The demise of the plaintiff company would have been certain had an injunction issued prohibiting the production of its principal product. To assure its survival pending an appeal from the District Court's finding of patent infringement, the plaintiff negotiated an agreement with the defendant whereby the plaintiff would agree

---

[2] The patent was originally owned by Bioximetry Technology, Inc., a company based in Boulder, Colorado. In 1984, the defendant acquired title to the patent when it purchased Bioximetry Technology, Inc. *BOC Group, Inc.* v. *Novametrix Medical Systems, Inc.,* 11 U.S.P.Q.2d 1853, 1853 (D. Conn. 1989).

to a form of judgment that included the injunction and the defendant would agree to grant the plaintiff a license to enable it to stay in business. The licensing agreement provided that the plaintiff would pay the defendant a nonrefundable sum of $400,000 which would constitute a credit against future royalties owed or which could be applied as a credit against an award of damages for past infringement.[3] The parties specified that the obligation to pay this sum would survive the termination of the licensing agreement.[4]

The plaintiff appealed only the issue of infringement to the federal Circuit Court of Appeals.[5] The Circuit Court reversed the District Court's finding of infringement, holding that the plaintiff's technology was not covered by the scope of the defendant's patent. *BOC Group, Inc.* v. *Novametrix Medical Systems, Inc.,* 15 U.S.P.Q.2d 1475 (Fed. Cir. 1990).[6]

---

[3] Paragraph 3.1 of the licensing agreement provided: "On or before July 1, 1989, Novametrix shall pay to BOC the sum of Four Hundred Thousand Dollars ($400,000) which sum shall be nonrefundable, but which shall constitute a credit against any royalties due to BOC pursuant to paragraph 3.3 hereof, or if Novametrix elects, said payment can be applied as a credit against any award of damages for past infringement as a result of any accounting under the civil action identified in paragraph 6.4 below. Any such election must be made by Novametrix no later than July 30, 1989."

[4] Paragraph 5.1 of the licensing agreement provided: "In the event BOC has not received the payment provided for in paragraph 3.1 above on or before July 1, 1989, this Agreement shall terminate at the end of the day on said July 1st; provided however, Novametrix's obligation to make such payment shall survive any termination of this Agreement."

[5] The United States Court of Appeals for the Federal Circuit is the federal appellate court having exclusive jurisdiction over appeals involving issues arising under the patent laws of the United States. 28 U.S.C. § 1295.

[6] The Circuit Court found that the manufacture of the plaintiff's oximeter did not constitute "literal infringement" of the defendant's patent, but remanded the case to the District Court for a determination of whether the plaintiff's oximeter was the "equivalent" of the patented device. *BOC Group, Inc.* v. *Novametrix Medical Systems, Inc.,* 15 U.S.P.Q.2d 1475, 1477–78 (Fed. Cir. 1990). On remand, the plaintiff moved for summary judgment on the remaining infringement issue, which was granted by the District Court and affirmed by the Circuit Court. *BOC Group, Inc.* v.

Following the decision of the Circuit Court, the plaintiff filed the present state court action for the return of the $400,000 nonrefundable payment. The plaintiff alleged, alternatively, that: (1) established law dictated that royalties paid by a licensee after a challenge is made to a patent are recoverable if the patent is later found to be unenforceable (the "challenge rule"); and (2) the licensing agreement should be rescinded because the parties entered into it under a mutual mistake.[7]

The defendant moved to strike the complaint for failure to state a cause of action. The trial court granted the motion to strike, concluding that the plaintiff had not alleged a breach of contract to justify return of the $400,000 payment or any legal basis for rescission of the licensing agreement. On appeal, the plaintiff claims that, because the trial court incorrectly treated the first count of the complaint as one alleging breach of contract rather than one alleging grounds for applying the challenge rule, the trial court improperly granted the motion to strike.[8] We conclude that, under either analysis, the trial court properly granted the motion to strike.

"The purpose of a motion to strike is to 'contest . . . the legal sufficiency of the allegations of any complaint

---

*Novametrix Medical Systems, Inc.,* 17 U.S.P.Q.2d 1493 (D. Conn. 1990), aff'd, LEXIS No. 11498 (Fed. Cir. 1991).

[7] On the same day as oral argument on the motion to strike, the plaintiff requested to amend its complaint to substitute the mutual mistake count for one requesting rescission because of unconscionability. The trial court refused to consider the unconscionability claim in rendering a decision on the motion to strike the complaint because it was not properly part of the complaint when the motion was heard. The plaintiff subsequently withdrew its request to amend its complaint.

[8] The plaintiff also argues that the licensing agreement should be rescinded because the payment was made under duress and the unequal economic bargaining power of the parties resulted in a contract of adhesion which is contrary to public policy. These allegations were not part of the plaintiff's complaint and were not before the trial court when the motion to strike was granted, and therefore will not be considered for the first time on appeal. Practice Book § 4185.

. . . to state a claim upon which relief can be granted.' In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted.) *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 285, 449 A.2d 986 (1982); *Mora* v. *Aetna Life & Casualty Ins. Co.,* 13 Conn. App. 208, 211, 535 A.2d 390 (1988). The first count of the plaintiff's complaint demanded return of the $400,000 payment on the ground that "royalties paid after challenge to a patent are recoverable if the patent is later found to be unenforceable. The BOC patent was found to be unenforceable against Novametrix." The plaintiff argues that this allegation, which the plaintiff claims accurately states the "challenge rule," provides the legal basis for its suit against the defendant, and that, therefore, the claim should have survived a motion to strike. Whether the policy embodied by the challenge rule warrants overriding the clear language of the licensing agreement to permit refund of a royalty payment if a claim of patent infringement is successfully challenged is an issue of first impression for this court. Our review of this doctrine and the policy underlying it leaves us unpersuaded that the plaintiff is entitled to any relief.[9]

The challenge rule originated with *Lear, Inc.* v. *Adkins,* 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969), in which the United States Supreme Court departed from prior law to hold that a patent licensee

---

[9] Because of our disposition of the application of the challenge rule to the facts of this case, we need not discuss the parties' disagreement about whether the trial court properly referred to the $400,000 payment as a royalty payment.

was no longer estopped from challenging the validity of the patent underlying the license agreement.[10] The court there considered "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain," and that "[l]icensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery." Id., 670. The court thus held that this important public policy overrides the technical requirements of contract doctrine so as to relieve a licensee from the liability for paying royalties once the licensee successfully challenges the validity of the licensor's patent. Id., 674; *Ransburg Electro-Coating Corporation* v. *Spiller & Spiller, Inc.,* 489 F.2d 974, 977 (7th Cir. 1973).

Subsequent cases have consistently upheld the right of a patent licensee to recover royalties paid after a successful legal challenge is made to the patent's validity. See *Bristol Locknut Co.* v. *SPS Technologies, Inc.,* 677 F.2d 1277, 1283 (9th Cir. 1982); *Transitron Electronic Corporation* v. *Hughes Aircraft Co.,* 649 F.2d 871, 874 (1st Cir. 1981); *St. Regis Paper Co.* v. *Royal Industries,* 552 F.2d 309, 313–14 (9th Cir.), cert. denied, 434 U.S. 996, 98 S. Ct. 633, 54 L. Ed. 2d 490 (1977); *Troxel Mfg. Co.* v. *Schwinn Bicycle Co.,* 465 F.2d 1253, 1260 (6th Cir. 1972), cert. denied, 416 U.S. 939, 94 S. Ct. 1942, 40 L. Ed. 2d 290 (1974). The challenge rule has maintained a relatively narrow existence, however,

---

[10] Before *Lear, Inc.* v. *Adkins,* 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969), a patent licensee was prohibited from challenging the validity of the licensor's patent under the contract doctrine of licensee estoppel. See *Automatic Radio Mfg. Co.* v. *Hazeltine Research, Inc.,* 339 U.S. 827, 836, 70 S. Ct. 894, 94 L. Ed. 1312 (1950). Both federal and state caselaw, however, sought "to accommodate the competing demands of the common law of contracts and the federal law of patents" and thus carved out exceptions to the estoppel doctrine. The result was "a chaos of conflicting case law, proceeding on inconsistent premises." *Lear, Inc.* v. *Adkins,* supra, 668.

and courts have been reluctant to extend its ambit beyond that originally conceived by the court in *Lear*. See, e.g., *Foster* v. *Hallco Mfg. Co.*, 947 F.2d 469, 475 (Fed. Cir. 1991) (*Lear* policy does not override policy of preserving the finality of judgments); *Hemstreet* v. *Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) (federal patent policy enunciated in *Lear* does not also override policy in favor of settlement of disputes); *Troxel Mfg. Co.* v. *Schwinn Bicycle Co.*, supra, 1257 (court declines to interpret *Lear* to permit recovery of royalties paid before challenge is made to validity of patent).

The plaintiff asks this court to extend the challenge rule to require refund of the $400,000 payment if a successful challenge was made to a finding of patent infringement rather than to a finding of patent validity. This doctrine apparently has never been applied if a challenge was made to patent infringement alone and we decline to do so now. The plaintiff entered into the licensing agreement with the defendant after the District Court found the defendant's patent to be valid, enforceable and infringed. The plaintiff chose to appeal only the issue of infringement, thus making the findings of validity and enforceability of the patent res judicata in any subsequent action between the parties as to this particular patent. *Lawlor* v. *National Screen Service Corporation*, 349 U.S. 322, 326, 75 S. Ct. 865, 99 L. Ed. 1122 (1955); *United States Industries, Inc.* v. *Otis Engineering Corporation*, 277 F.2d 282, 284 (5th Cir. 1960).[11] This court will not unnecessarily expand

[11] The issues of validity, enforceability, and infringement are significantly different in patent law, and each issue has a different focus. Patent validity looks to the invention itself and examines whether the patent claims define novel and nonobvious subject matter. See 35 U.S.C. §§ 102–103. The issue of enforceability focuses on the behavior of the patentee; it requires examining whether the patentee is guilty of fraud or inequitable conduct in obtaining the patent or whether the patentee has misused the patent. *Gardco Mfg., Inc.* v. *Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987). The issue of infringement focuses on whether a particular device falls within

a legal doctrine to enable a party to avoid the consequences of its tactical litigation decisions.[12]

Our doubts about the applicability of the challenge rule to litigation concerning patent infringement rather than patent validity are reenforced, in this case, by the terms of the contract which the parties freely negotiated. The plaintiff expressly agreed that its payment of $400,000 would be nonrefundable, and that its obligation to make this payment would survive any subsequent termination of the contract between the parties. In these circumstances, the plaintiff entered into the licensing agreement to remain an economically viable company while the infringement issue was being appealed, thereby assuming the risk of prevailing on the appeal and not being refunded the payment. Having received the benefit for which it bargained, the plaintiff has no valid claim to recover the moneys that

---

the particular boundaries of a patentee's invention, which are defined by the claims of the patent. *Lemelson* v. *United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).

That these issues are technically different is illustrated by *Gardco Mfg., Inc.* v. *Herst Lighting Co.*, supra, in which the court stated: "[A] patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct. Similarly, a valid patent may be (in the abstract) infringed, that is, the accused device may fall within the scope of the claim, but there will be no liability to the patentee when the patent is unenforceable."

The plaintiff attempts to apply a familiar interpretation of "enforceability" to argue that the challenge rule applies equally to a challenge to infringement because the result is the same; both an invalid and noninfringed patent cannot be enforced against a particular party. While the challenge rule has been applied consistently in cases where a patent has been found to be "unenforceable" because of its invalidity; we have found no instance where the rule has operated similarly on a patent found to be "unenforceable" against a party because of noninfringement.

[12] We note that had the plaintiff successfully challenged the validity of the patent in its federal appeal as well, it would still not necessarily be entitled to a refund of the $400,000 payment. Indeed, the defendant contends that the agreement would be enforceable in that instance as well. Because the challenge rule does not apply to challenges to infringement alone, we do not consider the result had validity been successfully challenged as well.

it paid the defendant. We conclude, therefore, that the plaintiff has failed to allege a valid cause of action for return of the $400,000 payment it made to the defendant. The trial court, therefore, properly granted the defendant's motion to strike.[13]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] We note also that the trial court granted the motion to strike for failure to allege a cause of action for breach of contract, and therefore did not specifically address the plaintiff's allegation that the challenge rule warranted return of the $400,000 payment. Thus, it is not clear whether the trial court failed entirely to consider the applicability of the challenge rule. That uncertainty, however, need not affect our decision. Even if a "trial court reaches a correct decision on incorrect grounds, that decision will be sustained if correct grounds exist to support it." *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 301, 429 A.2d 883 (1980).