[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE
On October 8, 1993, the plaintiffs, Robert Maresca and Carmen Vives, the administrator and administratrix of the estates of the ten decedents, and Hector Romero, Sr., ("Romero"), filed a sixteen count complaint, pursuant to General Statutes § 52-572m et. seq. ("Connecticut Product Liability Act") against the defendants, De Longhi, S.P.A., De Longhi America, Inc. (referred to collectively as "De Longhi") and Bradlee's, Inc., seeking damages for injuries and deaths arising from a fire allegedly caused by a defective heater designed, manufactured and sold by De Longhi.
On August 4, 1994, the defendants, De Longhi, S.p. A. and De Longhi America, Inc., filed a motion to strike counts one, three, four, five, eleven, twelve and thirteen.[1] Counts one, three, four and five allege liability for injuries and death caused by a defective product, including Romero's emotional distress, loss of spousal consortium, and loss of filial consortium. Counts eleven, twelve and thirteen assert claims for injuries resulting from the reckless conduct of the defendants, including Romero's emotional distress, loss of spousal consortium and loss of filial consortium.
Pursuant to Practice Book § 155, De Longhi filed a supporting memorandum of law, and the plaintiffs filed a timely objection.
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'"Novametrix Medical Systems, Inc. v. BOC Group Inc., 224 Conn. 210,214-15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id., 215. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. The motion "admits all facts well pleaded." Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989).[2]
1. Product Liability Act
The defendants argue that count one, and all counts derivative of count one, should be stricken because the plaintiffs pleaded under the Product Liability Act only, and did not also plead under the Wrongful Death Statute, General Statutes § 52-555. De Longhi argues that case law supports the proposition CT Page 12665 that "[t]he wrongful death statute, General Statutes § 52-555, is the sole basis upon which an action that includes an element of damages for a person's death or its consequences can be brought." Lynn v. Haybuster Mfg., Inc., 226 Conn. 282, 295,627 A.2d 1288 (1993).
The Product Liability Statute covers claims for "personal injury [and] death" arising from a defective product. General Statutes § 52-572m(b). A plaintiff "cannot bring a common law cause of action for a claim within the scope of the [product liability] statute." Daily v. New Britain Machine Co.,200 Conn. 562, 571, 512 A.2d 893 (1986). Any injuries falling within the scope of the Product Liability Act must be brought under that statute, "as it was intended by the legislature to be [the] exclusive [remedy] Id., 572. "A product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers . . . for harm caused by a product." General Statutes § 52-572n. "`Harm' includes . . . personal injuries including death." General Statutes § 52-572m(d). Thus, the plaintiffs should not be required to plead under the Wrongful Death Statute if the claim falls within the scope of the Product Liability Act.
The proposition stated in Lynn, must be read in the context of the court's discussion, which concerns limiting causes of action in derogation of common law. Lynn v. HaybusterMfg., Inc., supra, 226 Conn. 295. Lynn did not concern a wrongful death claim, and the court's statement should be interpreted as an example of statutory interpretation, supporting the concept of limiting recovery to the strict terms of the statute, rather than as a contradiction to the clear language of the Product Liability Act.
Because the Act provides coverage for, and is the exclusive remedy for, injuries and death caused by product defects, the plaintiffs properly pleaded their claim under the Act. Therefore, De Longhi's motion to strike count one and all counts derivative of count one is denied.
2. Filial Consortium
De Longhi moves to strike counts five and thirteen, alleging loss of filial consortium, for failure to state a cause of action. While the plaintiffs correctly note that some trial courts have recognized claims for loss of filial consortium; CT Page 12666 see, e.g., Sliney v. Denisanko, 9 CONN. L. RPTR. No. 17, 537 (September 13, 1993) (Gordon, J.); no appellate court in this state has recognized such a claim. See Mahoney v. Lensink, 17 Conn. App. 130,141, 550 A.2d 1088 (1988), rev'd on other grounds, 213 Conn. 548,569 A.2d 518 (1990). Because Connecticut does not recognize a cause of action for loss of filial consortium, De Longhi's motion to strike counts five and thirteen is granted.
3. Bystander emotional distress
De Longhi moves to strike counts three, four, five, eleven, twelve and thirteen, alleging bystander emotional distress, for failure to state a cause of action.[3] In paragraph four of count three, the plaintiffs allege that "Hector Romero, Sr. witnessed the deaths of Claribel Baldwin, Lilihnette Romero, and Hector Romero, Jr., and, as a result, he suffered severe emotional distress." Paragraph 24(b) of counts three and eleven alleges "emotional distress and trauma" which clearly contemplates damages for both his own injuries, as well as damages for bystander emotional distress, for witnessing injuries of family members.
In 1959, the Supreme Court held that "[e]ven where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." Strazzav. McKittrick, 146 Conn. 714, 719, 156 A.2d 149 (1959). When reconsidering the issue in 1980, the court noted the trend in other jurisdictions to recognize bystander emotional distress, and also considered Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912,69 Cal.Rptr. 72 (1968). Amodio v. Cunningham, 182 Conn. 80,92-93, 438 A.2d 6 (1980). The court did not adopt the three prong test in Dillon, which is the same test that the plaintiffs urge the court to adopt in the present case. Id.
In 1988, the court refused to recognize a claim for bystander emotional distress for medical malpractice: "Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice . . . we should return to the position we articulated in Strazza that `there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another.'" (Citation omitted.)Maloney v. Conroy, 208 Conn. 392, 402, 545 A.2d 1059 (1988). CT Page 12667
There is a split of authority within the Superior Court as to whether the supreme court impliedly recognized by-stander emotional distress in a context other than medical malpractice. See, e.g., Vieira v. Ingersoll, 12 Conn. L. Rptr. No. 1, 24 (August 1, 1994) (Pickett, J.) (recognizing bystander emotional distress claim of co-victim of assault); LaPrad v. Parizek,
12 Conn. L. Rptr. No. 13, 436 (October 24, 1994) (Klaczak, J.) (holding that Connecticut does not recognize claim for bystander emotional distress).
Strazza v. McKittrick, supra, has not been overruled, and no appellate court has recognized such a cause of action. Because damages for bystander emotional distress are contemplated in paragraphs four and twenty-four of counts three and eleven, and because Connecticut does not recognize such a cause of action, De Longhi's motion to strike counts three and eleven is granted.
CONCLUSION
De Longhi's motion to strike is granted as to counts three, five, eleven and thirteen of the plaintiffs' complaint, and is denied as to all other counts.