[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
On November 17, 1994, the plaintiff, James Edelman, filed a seven count complaint against defendants Mutual of Omaha, and William F. Brennan, d/b/a William Brennan Division Office of Glastonbury, Connecticut ("Brennan").
The plaintiff alleges the following. On August 8, 1992, the plaintiff entered into a written contract with defendant, Mutual of Omaha, through its agent, Brennan, which was ratified, accepted and approved by Mutual on August 21, 1992. The contract provided that the plaintiff would be an agent of Mutual of Omaha and would be appointed to solicit and procure applications for Mutual of Omaha's insurance policies in the territory, and from the office, assigned by Mutual of Omaha.
In reliance upon said contract, the plaintiff did solicit and procure applications for insurance policies within his assigned territory which included Berkshire County, Massachusetts.
In consideration of the plaintiff's efforts pursuant to the contract, the plaintiff earned the right to collect commissions and fees from Mutual of Omaha on policies which the plaintiff sold. At all times the plaintiff performed in CT Page 5714 accordance with the terms and conditions set forth in the written contract with Brennan and Mutual of Omaha.
On or about March 30, 1993, Mutual of Omaha issued to its General Managers and General Agents, including William Brennan and the plaintiff, a written directive stating that it would be unlawful for Massachusetts or Connecticut agents to sign an application for health insurance which would enable a New York State resident to avoid recent New York State legislation which set premiums for health insurance policies based on a community rating system.
On or about March 19, 1993, defendant, Mutual of Omaha and the plaintiff's supervisor, Victor Allison, of Enfield, Connecticut, an agent, servant or employee of the defendants, Brennan and Mutual of Omaha, forged the plaintiff's signature to a health insurance application for a New York State resident in an attempt to circumvent New York's community rating system by applying for health insurance coverage through a Massachusetts agent.
The plaintiff refused to acquiesce to the fraudulent act and demanded that he be removed as agent of record on the insurance application. Defendant Allison then recommended to defendant Brennan that plaintiff's contract be terminated.
The plaintiff alleges that as a result of defendant Allison's actions, Brennan and Mutual of Omaha were induced to breach the contract with the plaintiff on April 19, 1993.
In count one, the plaintiff alleges that the actions of defendant Allison constitute a tortious interference with the contractual relations of the plaintiff. The plaintiff claims that as a result of the actions of defendant Allison, he sustained loss of future income, fringe benefits, and other valuable job rights all to his financial detriment. Furthermore, the plaintiff alleges that he has suffered emotional distress and upset as well as damage to his professional reputation.
In count two the plaintiff alleges breach of contract as to Brennan. The plaintiff claims that defendant Brennan breached the contract with the plaintiff, specifically, the implied covenant of good faith and fair dealing by terminating the contract without legitimate work-related justification or CT Page 5715 excuse. As a result of this breach, the plaintiff claims that he has suffered loss of future income, fringe benefits and other valuable job rights, as well as emotional distress and upset, and damage to his professional reputation.
In count three, the plaintiff claims that the actions of Brennan in terminating the plaintiff's contract because of his refusal to participate in fraudulent insurance practices undermines the public policy of the State of Connecticut which is one against fraud and unfair insurance and trade practices as set out in General Statutes § 53a-139, § 38c-815 and § 38c-816, as well as the common law.
In count four, the plaintiff claims that Mutual of Omaha breached its contract with the plaintiff, specifically, the implied covenant of good faith and fair dealing by ratifying the actions of its duly authorized agent, Brennan, in terminating the plaintiff's contract without legitimate work-related justification or excuse. As a result of this breach the plaintiff claims that he has suffered loss of future income, fringe benefits and other valuable job rights, emotional distress and upset, as well as damage to his professional reputation.
In count five the plaintiff alleges that the defendant, Mutual of Omaha, in ratifying the actions of its agent Brennan in terminating the plaintiff's contract for his refusal to participate in fraudulent insurance practices, undermines the public policy of the State of Connecticut which is one against fraud and unfair insurance and trade practices as set out in General Statutes § 53a-139, § 38c-815 and § 38c-816, as well as the common law.
In count six, the plaintiff alleges that the actions of defendant Allison, in forging the plaintiff's signature to an application for health insurance, was an attempt to secure Massachusetts premium rates for a New York resident, and therefore, was an attempt to fix control or otherwise maintain premium rates for insurance policies. The plaintiff claims that such conduct was a violation of Connecticut's Antitrust Act, General Statutes §§ 35-24 et. seq. Furthermore, the plaintiff claims that defendant Allison was acting as the agent of the defendants, Brennan and Mutual of Omaha, and within the scope of his actual or apparent authority, and therefore, pursuant to General Statutes § 35-39, the acts of CT Page 5716 defendant Allison are the acts of Brennan and Mutual of Omaha.
In count seven the plaintiff alleges that the actions of defendants Brennan and Mutual of Omaha's terminating the plaintiff's contract for his refusal to participate in fraudulent insurance practices undermines the public policy of the State of Connecticut as set out in Connecticut's Antitrust statute. General Statutes § 35-24 et seq.
On December 1, 1994, the defendants filed a motion to strike together with a supporting memorandum. The defendants argue that counts one, three, five, and seven should be stricken on the ground that the counts do not state valid causes of action. The defendants also argue that the allegations contained in counts one, six and seven do not contain the necessary elements to state a claim. Lastly, the defendants argue that counts one, three, five, six and seven are legally insufficient.
On February 14, 1995, the plaintiff filed an objection to the defendants' motion to strike and a supporting memorandum.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) Novametrix MedicalSystems, Inc. v. BOC Group, 224 Conn. 210, 214-15, 618 A.2d 25
(1991).
Count One- Tortious Interference
The defendants argue that the plaintiff has failed to plead the requisite elements in order to establish a cause of action for tortious interference with contractual rights. The defendants also argue that the plaintiff has failed to plead and prove that the defendants willingly engaged in conduct such as fraud, misrepresentation, intimidation, obstruction or molestation or that the defendants acted maliciously.
In opposition, the plaintiff argues that he has alleged CT Page 5717 sufficient facts to support a cause of action for tortious interference with contractual relations.
In Solomon v. Aberman, 196 Conn. 359, 364, 493 A.2d 193
(1985), the court stated:
 This court has long recognized a cause of action for tortious interference with contract rights or other business relations. . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss.
In count one, the plaintiff alleges that he and defendant Mutual of Omaha had a written contract for employment. Secondly, the plaintiff alleges that defendant Allison was the plaintiff's supervisor and was acting as an agent, servant, or employee of the defendants Brennan and Mutual of Omaha. Thirdly, the plaintiff alleges that defendant Allison's conduct was fraudulent in that he tried to intimidate the plaintiff into acquiescing to the defendant's fraudulent act. Furthermore, the plaintiff alleges that it was malicious for the defendant to convince Brennan to breach the employment contract. In the court's opinion, the plaintiff has alleged facts sufficient to support a cause of action for tortious interference with contractual relations.
Next, the defendant argues that because the plaintiff has alleged that defendant Allison was an agent of defendant Mutual, the plaintiff/employee cannot claim tortious interference in an employment contract against his employer as there can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contract.
In opposition, the plaintiff argues that because the defendant was acting outside the scope of his duty, defendant Allison is precluded from claiming the defense of agency. The plaintiff claims that Allison did not act legitimately within the scope of his duty, but used his corporate power improperly and for his personal gain by successfully persuading William Brennan to breach the plaintiff's employment contract. CT Page 5718
In Murray v. Bridgeport Hospital, 40 Conn. Sup. 56
(1984), the court stated:
 An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. . . An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.
Id. at 60-61. The court finds that defendant Allison was acting outside the scope of his employment when he allegedly forged the plaintiff's signature. Therefore, he is precluded from asserting the "agency defense." Accordingly, the defendants' motion to strike count one of the complaint is denied.
Counts Three Five and Seven- Public Policy Tort
The defendants argue that Counts Three, Five and Seven are based on "Public Policy Tort," something no Connecticut case or Statute has ever addressed. The defendants also argue that the plaintiff has failed to allege either facts or legal theory sufficient to support a cause of action under the Connecticut Unfair Trade Practices Act and the Antitrust Act.
The plaintiff argues that in Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 427 A.2d 385 (1980), the Connecticut Supreme Court recognized a cause of action in tort for discharge where a public policy is violated. The plaintiff also argues that his discharge violated public policy considerations founded in General Statutes §§ 53a-139, 38c-815, 38c-816, 35-24 et. seq. and the common law.
Our Supreme Court in Sheets v. Teddy's Frosted Foods,Inc., 179 Conn. 471, 427 A.2d 385 (1980), "recognized, as have the vast majority of other courts, a common law cause of action in tort for discharges if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public CT Page 5719 policy." (Internal quotation marks omitted.) Morris v.Hartford Courant Co., 200 Conn. 676, 679, 513 A.2d 66 (1986), quoting Sheets v. Teddy's Frosted Foods, Inc., supra,179 Conn. 475. The Sheets court was concerned about "the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not." Sheets v. Teddy'sFrosted Foods, Inc., supra, 179 Conn. 477. The court recognized "that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." Id.
In Sheets, the court was specific when it held that where an employee alleges that he was dismissed in retaliation for his insistence that the employer comply with the requirements of a state statute, the employee has alleged a violation of public policy sufficient to support a claim for wrongful discharge. Id., 480. The Sheets court declined to "decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. . . ." Id., 480. Nonetheless, the court in Sheets recognized that "public policy [in general] imposes some limits on unbridled discretion to terminate the employment of someone hired at will." Id., 476. Moreover, the Supreme Court in Morris v. Hartford Courant Co., 200 Conn. 676,513 A.2d 66 (1986), acknowledged the "inherent vagueness of the concept of public policy" and indicated that a violation could be based on a judicially conceived notion of public policy, as well as on an explicit statutory or constitutional provision. Id., 680. The Morris court conceded that "it is often difficult to define precisely the contours of the [public policy] exception." Id.
A few Superior Courts have held that where an employee alleges sufficient facts to prove that his termination violated a certain public policy, without also alleging a violation of a state statute or a violation of a "judicially conceived notion of public policy," the employee has pleaded sufficient facts to survive a motion to strike. See MacLeanv. Northeast Province of the School Sisters of Notre Dame,7 CSCR 471, 472 (March 31, 1992, Lewis, J.) (Motion to strike denied where plaintiff alleged that "her termination violated CT Page 5720 public policies of this state to preserve health and safety with respect to the use of drugs, and to safeguard the health and safety of patients.") See also Gallagher v. Hamilton,
Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 04 59 89 (October 18, 1994, Holzberg, J.) (Court denied defendant's motion to strike plaintiff's claim for retaliatory discharge finding that the discharging of employees in credit unions who according to union bylaws could only be discharged for cause violated public policy.)
In the present case, the plaintiff alleges that defendants Brennan and Mutual of Omaha discharged the plaintiff for an improper reason; his refusal to participate in fraudulent insurance practices. As stated above, in ruling on a motion to strike, the court is limited to the facts alleged in the complaint, and must construe the facts in the complaint most favorable to the plaintiff. Novametrix, supra. In the court's opinion, the plaintiff has alleged sufficient facts to support a cause of action for wrongful discharge based on a violation of public policy. Accordingly, the defendants' motion to strike Counts Three, Five, and Seven is denied.
Count 6- Antitrust Violation
The defendants argue that the facts which the plaintiff alleges in the Sixth Count do not support a cause of action for an antitrust violation. The defendants argue that the plaintiff has failed to allege that there was a "plurality of actors," in order to establish a violation of General Statutes § 35-28. Furthermore, the defendants argue that the plaintiff has failed to plead facts which, if true, would establish that the defendants' alleged conduct was in restraint of trade. Lastly, the defendants argue that the plaintiff has not alleged an antitrust injury.
The plaintiff argues that he has pleaded sufficient facts to prove "concerted action" through the conduct of the defendants. Also, the plaintiff argues that sufficient facts have been pleaded to prove defendants' restraint of trade and injury.
General Statutes §§ 35-24 et. seq., contains the Connecticut Antitrust Act. Specifically, General Statutes § 35-26 states that "[e]very contract, combination, or CT Page 5721 conspiracy in restraint of any part of trade or commerce is unlawful." General Statutes § 35-28 states that:
 [w]ithout limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce; (b) fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any part of trade or commerce; (c) allocating or dividing customers or markets, either functional or geographical, in any part of trade or commerce; or (d) refusing to deal or coercing, persuading, or inducing third parties to refuse to deal with another person.
In Shea v. First Federal Savings Loan Assn. of New Haven,184 Conn. 285, 439 A.2d 949 (1981), the court stated that "[s]ection 35-28 has no specific counterpart in the federal antitrust laws. It codifies federal case law concerning certain `per se' violations of the Sherman Act, notably § 1. . . A violation of § 35-28 must emanate from a contract, combination or conspiracy and thus requires a plurality of actors." Id., 306.
The plaintiff alleges in Count Six of the complaint that defendant Allison, acting as an agent of defendants Brennan and Mutual of Omaha, forged the plaintiff's signature in an "attempt to fix, control or otherwise maintain premium rates for insurance policies . . . in furtherance of a conspiracy to provide insurance policies to New York residents at premium rates that would be substantially lower than that allowed by New York's community rating system." The plaintiff has alleged sufficient facts to establish a "plurality of actors" as is required pursuant to General Statutes § 35-24 et. seq.
and the case law discussed above.
Next, it must be determined whether the plaintiff has pleaded sufficient facts to establish that the defendants' conduct was in restraint of trade. In Elida, Inc. v. HarmorRealty Corporation, 177 Conn. 218, 227 (1919), the court stated that "there are certain agreements or practices which because of their pernicious effect on competition and lack of CT Page 5722 any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."
Against this background, the court concludes that the plaintiff has alleged sufficient facts which, if proven, show that the defendants' conduct was in restraint of trade. The practice of price fixing has a pernicious effect on competition and is inherently illegal. Therefore, the defendants' motion to strike count six is denied.
Hale, State Trial Referee, J.