[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 20, 1995, the plaintiff, Lewis Downing, M.D. (Downing), filed an eleven count, second revised complaint against the defendants, Yale University Health Services (YUHS), Stephanie Spangler, M.D. (Spangler), Paul Genecin, M.D. (Genecin), and Nicholas Fiebach, M.D. (Fiebach).
According to the facts alleged in the complaint, Downing is a sixty-three year old medical doctor. In 1985, Downing accepted a contract for full-time employment with YUHS for a term of five years with reappointments every five years until retirement age.[1] Prior to acceptance of the full-time position, Downing had been employed by YUHS on a part-time basis since 1971.
Downing alleges that the contract provided that he could not be terminated without "just cause." (Second Revised Complaint. count two, para. 8). In 1992, Downing received a merit increase and a renewal of his contract until July 1997. At that time, Downing's supervisor, Genecin, suggested to Downing that Downing consider early retirement and Genecin also told Downing that Downing's job was not in jeopardy. Downing informed Genecin that he did not wish to retire.
On March 24, 1993, Spangler, the Director of YUHS, advised Downing that, as a result of a peer review, Downing's clinical responsibilities were terminated and that his salary and benefits would terminate on April 30, 1993. Downing alleges that he was not warned that his job was in jeopardy and that he was not given an opportunity to contest the charges against him prior to his termination.
Count one is directed against YUHS and alleges that YUHS breached its contract with Downing by terminating him without just cause; by failing to follow YUHS's policies and procedures CT Page 14382 in such termination; and by denying him a hearing to determine the existence of just cause for his termination. Count two is directed against YUHS and Spangler and alleges a breach of an implied covenant of good faith and fair dealing. Count three is directed against all defendants, and alleges negligent infliction of emotional distress. Count four is directed against all defendants and alleges invasion of privacy. Count five is directed against all defendants and alleges defamation. Count six is directed against YUHS, Spangler, and Genecin, and alleges negligent performance evaluation. Count seven is directed against YUHS;, Spangler, and Genecin, and alleges negligent misrepresentation. Count eight is directed against Genecin and alleges intentional infliction of emotional distress. Count nine is directed against Genecin and alleges slander. Count ten appears to be directed against all defendants and alleges wrongful termination based on age, citing General Statutes §46a-60(1) and 29 U.S.C. § 623. Count eleven appears to be directed against all defendants and alleges wrongful termination based on race, citing General Statutes § 46a-60(1) and 42 U.S.C. § 2000e-2.
Downing seeks an order enjoining YUHS, Spangler, and Fiebach from terminating his employment as well as his medical malpractice and health insurance. Downing also seeks reinstatement to active medical practice; compensatory damages, double or treble damages, punitive damages, and such other relief in law or equity to which he is entitled.
On July 11, 1995, the defendants filed a motion to strike count two as to Spangler, and counts three, six, nine, ten, and eleven in their entirety. The grounds for the motion are set forth in the motion and the memorandum in support thereof. Spangler moves to strike count two on the ground that it fails to state a claim against her because she was not a party to the contract of employment. The defendants move to strike count three on the ground that it is barred by the exclusivity provisions of the Workers' Compensation Act; count six on the ground that it fails to state a claim cognizable under Connecticut law; count nine on the ground that it is duplicative of count five; and counts ten and eleven on the ground that there is no common law claim for wrongful discharge based on age and race because the statutory scheme for employment discrimination provides the exclusive remedy.
On August 23, 1995, Downing filed an objection to the motion to strike. The arguments of the parties in support of and in CT Page 14383 opposition to the motion to strike are set out more fully below.
A motion to strike challenges the legal sufficiency of a pleading. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). The motion to strike admits all well-pleaded facts and those necessarily implied from the allegations. Bouchard v. People's Bank, 219 Conn. 465, 471-72,594 A.2d 1 (1991). In ruling on a motion to strike, the court is limited to facts alleged in the complaint and the grounds specified in the motion. Novametrix Medical Systems, Inc. v. BOCGroup, Inc., supra, 215. The court must construe the plaintiff's complaint in the manner most favorable to sustaining its legal sufficiency. Id.
Spangler moves to strike count two on the ground that it fails to state a claim against her upon which relief can be granted. Spangler posits that for the covenant of good faith to arise, there must be a contractual obligation. She contends that because she was not a party to the contract between Downing and YUHS, Downing cannot have a cause of action against her for breach of the covenant. Spangler states that she was not the director of YUHS at the time the contract was formed. She refers to Exhibit A to the complaint and states that this letter, which is the alleged contract between the parties, was signed by a former director of YUHS on behalf of YUHS, and was not signed by her.
In his opposing memorandum, Downing admits that the contract entered into between Downing and YUHS was not signed by Spangler, but rather was signed by her predecessor on behalf of YUHS. This admission notwithstanding, Downing argues that, as a subsequent director of YUHS, Spangler had the same duty to enforce the contract as did her predecessor. Thus, Downing argues, Spangler was required to perform the contract in accordance with the covenant of good faith and fair dealing.
Connecticut imposes a duty of good faith and fair dealing in employment contracts. Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 568-69, 479 A.2d 781 (1984). The purpose of allowing such claims is to "fulfill the reasonable expectation of the contracting parties . . . ." Id., 567. "A cause of action founded upon . . . the common law theor[y] of . . . breach of the implied covenant of good faith and fair dealing . . . lie[s] only against a plaintiff's employer and not directly against an employer's agent." Epworth v. Journal Register Co., Superior Court, judicial CT Page 14384 district of Litchfield, Docket No. 0065371 (November 1, 1994, Pickett, J.).
The complaint fails to allege the facts or legal basis upon which Spangler is claimed to be liable to Downing for breach of the implied covenant.[2] "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.).Liljedahl Brothers, Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990). There being no allegations in count two to support a cause or action against Spangler for breach of the implied covenant of good faith and fair dealing, Spangler's motion to strike count is therfore [therefore] granted.
The defendants move to strike count three on the ground that the claim for negligent infliction of emotional distress is barred by the Workers' Compensation Act, General Statutes §31-284(a).[3] The defendants contend that the negligent infliction of emotional distress claim arose out of and in the course of Downing's employment because Downing had not been terminated when he brought this action. At oral argument on this motion on September 18, 1995, the defendants posited that a claim of negligent infliction of emotional distress relating to events occurring at the time of discharge or afterwards would not be barred by the Act because the employment relationship is considered to have ended. The defendants argued, however, that, in this case, the negligent infliction of emotional distress claim arose at a time when Downing was still employment by YUHS, although his clinical responsibilities were "suspended." Essentially, the defendants argue that because Downing's clinical responsibilities were terminated in March and his salary and benefits were terminated in April, the alleged injury with respect to his termination occurred during the course of his employment.[4]
Downing argues that if a claim of negligent infliction of emotional distress arises out of and is incident to an employee's termination, it is not barred by the exclusivity provision of the Act. Furthermore, Downing argues that his injury did not arise out of the course of his employment and that he was neither fulfilling the duties of his employment nor doing something incidental to it at the time of the alleged injury so as to implicate the operation of the exclusivity provision.
In Fulco v. Norwich Roman Catholic Diocesan Corp., 27 Conn. App. 800,609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, CT Page 14385627 A.2d 931 (1993), the court held that a claim for negligent infliction of emotional distress arising out of the plaintiff's discharge is not barred by the exclusivity provisions of the Workers' Compensation Act. The court noted that "[t]he Workers' Compensation Act provides the exclusive remedy to employees seeking compensation for work related injuries . . . where (1) the plaintiff was an employee of the defendant, (2) the plaintiff suffered a personal injury and (3) the injury arose out of and in the course of the plaintiff's employment." Id., 807. "To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employment is reasonably fulfilling the duties of the employment or doing something incidental to it." (Internal quotation marks omitted.). Id., 808. "Prior to Fulco there was indeed a conflict of authority `as to whether termination of an employee is "in the course of employment" so as to bar an employee's civil action for damages against its employer."' Chieffalo v. Norden Systems,Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 0127694 (November 10, 1994, Lewis, J.,12 Conn. L. Rptr. 656), quoting Murphy v. Midwest ConnecticutCouncil on Alcoholism, Superior Court, judicial district of Litchfield, Docket No. 051423 (January 10, 1992, Pickett, J.,5 Conn. L. Rptr. 436, 437).
In the present action, the defendants move to strike Downing's claim of negligent infliction of emotional distress on the ground that the Workers' Compensation Act is Downing's exclusive remedy. A special defense, and not a motion to strike, is the appropriate procedural device to challenge count three on the ground that it is barred by the exclusivity provisions of the Act. Kinosh v. Stephen Chevrolet, Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 506307 (February 10, 1993, Dunn, J.) (stating that questions regarding the exclusivity of the Workers' Compensation Act must be raised by a special defense); Cecere v. LaBonne's Epicure, Inc.,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 355157 (March 11, 1993, Wagner, J.,8 Conn. L. Rptr. 465) (stating that a special defense, and not a motion to strike, is the proper procedural device to challenge a complaint on the ground that its is barred by the exclusivity provisions of the Workers' Compensation Act); Venturi v. WilliamW. Backus Hospital, Superior Court, judicial district of New London at New London, Docket No. 523510 (July 1, 1993, Hendel, J.) (denying motion to strike on ground that a special defense is CT Page 14386 the proper means by which to challenge claims of negligent or intentional infliction of emotional distress as being barred by the exclusivity provisions of the Workers' Compensation Act);Werge v. Southern New England Telephone, Superior Court, judicial district of New London at New London, Docket No. 527516 (May 23, 1994, Leuba, J.) (stating that "[a] special defense, and not a motion to strike, is the proper procedural vehicle to challenge the plaintiff's complaint on the ground that it is barred by the exclusivity provisions of the Workers' Compensation Act."); see also Grant v. Bassman, 221 Conn. 465, 472, 604 A.2d 814 (1992) (holding that a claim that the plaintiff elected workers' compensation as a remedy is raised as a special defense and not on a motion to dismiss).
On the basis of the foregoing, the motion to strike count three is denied.
Count six on the ground that it fails to state a claim upon which relief can be granted because Connecticut does not recognize a cause of action for "negligent performance evaluation." The plaintiff did not respond to this argument in his memorandum in opposition to the motion to strike. At oral argument before this court on September 18, 1995, Downing argued that although his employment contract did not require an evaluation, his supervisor conducted an evaluation and Downing was not told that his job was in jeopardy. Downing argued that this was an omission — an actionable breach of duty assumed by his supervisor.
In Burnham v. Karl Gelb, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 537069 (January 9, 1995, Blue, J., 13 Conn. L. Rptr. 258), cited by the defendants, the plaintiff brought a wrongful discharge action against the defendant. The defendant moved to strike the third count of the complaint, entitled "negligent performance appraisal." Id. The third count alleged that the defendant "negligently conducted the plaintiff's periodic review in not telling her that her discharge was being considered." Id. After an analysis of Connecticut law on wrongful termination in the at-will employment context, the court granted the motion to strike. Id. The court held that "[t]he specific tort of `Negligent Performance Appraisal' claimed by the plaintiff finds no basis in the common law. The law has not recognized a duty in this setting distinct from the duties that may inhere in the contract of employment itself." Id. CT Page 14387
Count six fails to state a claim upon which relief can be granted to the extent that it alleges a cause of action in tort for negligent performance evaluation, notwithstanding that a motion to strike tests whether Connecticut "is ready to recognize a newly emerging ground of liability." (Internal quotation marks omitted.). Scalise v. Bristol Hospital, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0525217 (July 6, 1995, Corradino, J., 14 Conn. L. Rptr. 534).
In Burnham, however, the court suggested that a duty regarding performance appraisal may arise in employment contracts. Although count six is labeled "negligent Performance Evaluation," which sounds in tort,[5] the specific allegations contained in count six sound in contract. Count six alleges, inter alia, that "[a]s a result of its contract with the plaintiff, the defendants owed the plaintiff a duty to use ordinary care when performing its contractual obligations." (Second Revised Complaint, count six, para. 18). The complaint also alleges that "[b]y failing to inform the plaintiff during any reviews in 1992 or in prior reviews that his discharge was being considered or that discharge was possible unless he met certain goals and expectations for his position, the defendants breached their duty to use ordinary care when performing their contractual obligations." (Second Revised Complaint, count six, para. 19). The plaintiff, however, has not alleged a contractual duty, and no duty regarding performance appraisal is found in Exhibit A of the complaint, which Downing claims is the employment contract between Downing and YUHS. Furthermore, the plaintiff stated at oral argument that Downing's employment contract did not require an evaluation.
Count six fails to state a legally sufficient cause of action in tort or in contract and the motion to strike is granted.
Genecin moves to strike count nine on the ground that it is duplicative of count five. Count nine is directed against Genecin and alleges slander. Count five is directed against Genecin, Spangler, Fiebach, and YUHS, and alleges defamation. Genecin argues that the tort of slander is subsumed within the concept of defamation. Thus, he argues that count nine is duplicative of count five and is stricken. Downing objects to the motion on the ground that the duplicative nature of a pleading is not a proper ground for a motion to strike. CT Page 14388
A request to revise, and not a motion to strike, is the proper procedural device for deletion of duplicative pleadings.Gamlestaden PLC v. Backstrom, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket NO. 0130060 (May 17, 1995, Karazin, J.); A.C. Nielsen Co. v. Wang Laboratories,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312400 (February 6, 1995, Maiocco, J.); Tata v.Morgan, Superior Court, judicial district of Waterbury, Docket No. 119215 (May 4, 1994, Sylvester, J.); Johnson v. KaiserFoundation Health Plan, Superior Court, judicial district of New Haven, Docket No. 031241 (May 18, 1994, Gray, J.); Gallagher v.Hamilton Standard Federal Credit Union, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 0459892 (October 18, 1994, Holzberg, J.); Delvecchio v. Mobil OilCorp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 210407 (August 12, 1986, Jacobson, J.,1 CSCR 635, 636); see also Practice Book § 147 (stating that "[w]henever a party desires to obtain . . . (2) the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading . . . the party desiring such an amendment . . . may file a timely request to revise that pleading."). According, y, irrespective of whether count nine actually is duplicative of count five, Genecin's motion to strike count nine is denied.
The defendants move to strike count ten on the ground that it does not state a claim upon which relief can be granted. The defendants argue that Downing cannot bring a common law claim for wrongful discharge because the statutory scheme for employment discrimination is the plaintiff's exclusive remedy.
In his memorandum in opposition to the motion to strike, Downing contends that in so far as count ten alleges violations of state and federal statutes, it is not stricken.
Count ten, entitled wrongful discharge based on age, incorporates the first seventeen paragraphs of count one and alleges that Downing "was terminated from his employment with Yale University Health Services due to his age in gross violation of public policy as embodied in state and federal laws that prohibit discrimination based in whole or in part upon age and in violation of C.G.S. 46a-60(1) and 29 U.S.C. § 623." (Second Revised Complaint, count ten, para. 18).
The defendants cite numerous cases for the proposition that CT Page 14389 "Connecticut courts do not recognize a cause of action for wrongful discharge in violation of public policy if the former employee has other statutory remedies available." (Memorandum in Support of Motion to Strike, July 11, 1995, p. 8). It is not necessary to reach this argument because "the right to recover in tort for wrongful discharge extends only to employees at will."D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 211, n. 1, 520 A.2d 217 (1987). "As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will. . . . The doctrine of wrongful discharge, a narrow exception to this rule, provides that an employer may be liable for discharge of an at will employee at least in cases where the discharge contravenes a clear mandate of public policy." (Citations omitted; internal quotation marks omitted.). Id. In D'Ulisse-Cupo, the plaintiff was not an employee at will and the court held that she was therefore not entitled to invoke the doctrine of wrongful discharge. Id. In the present action, Downing has alleged that he was employed under a contract with YUHS for consecutive five year terms. (Second Revised Complaint, counts 1 — 10, para. 4). Accordingly, Downing may not maintain a cause of action for wrongful discharge.[6]
It is not clear that Downing has alleged a cause of action based on the common law theory of wrongful discharge. Count ten, although entitled wrongful discharge, alleges a violation of statute. Applying the principle that the court must construe the plaintiffs complaint in the manner most favorable to sustaining its legal sufficiency; Bouchard v. People's Bank, 219 Conn. 465,471, 594 A.2d 1 (1991); the motion to strike count ten is denied.
Count eleven, entitled wrongful discharge based on race, incorporates the first seventeen paragraphs of count one and alleges that Downing "was terminated from his employment with Yale University Health Services due to his race in gross violation of public policy, as embodied in state and federal laws that prohibit discrimination based in whole or in part upon age and in violation of C.G.S. 46a-60(1) and 42 U.S.C. § 2000e-2." (Second Revised Complaint, count eleven, para. 18).
The defendants move to strike count eleven on the ground that it fails to state a claim upon which relief can be granted. The defendants' argument in support of the motion to strike count eleven is the same as that advanced in support of the motion to strike count ten. On the basis of the foregoing analysis, the motion to strike count eleven is denied. CT Page 14390
Howard F. Zoarski, Judge