## JOSEPH GORGA *v.* UNIROYAL CHEMICAL CORPORATION ET AL.

Superior Court        Judicial District of        File No. CV960132014
                           Waterbury

Memorandum filed December 12, 1996

*Schatz & Nobel,* for the plaintiff.

*Day, Berry & Howard* and *Gager & Peterson,* for the defendants.

FINEBERG, J. On March 28, 1996, the plaintiff, Joseph Gorga, a resident of New Jersey, filed a class action complaint in three counts against the defendants. The plaintiff seeks to bring this action on behalf of "all persons, other than defendants, their agents, affiliates and auditors, who purchased Uniroyal Chemical common stock on the public offering of such securities on or about March 16, 1995, and in the aftermarket through

and including September 20, 1995" (class period). The complaint asserts federal securities law claims against the defendants for alleged violations of §§ 11, 12 (2) and 15 of the federal Securities Act of 1933 (1933 act), 15 U.S.C. §§ 77k (a), 77*l* (2) and 77o,[1] and also asserts a claim under the Connecticut Uniform Securities Act (CUSA). In his complaint, the plaintiff alleges the following facts upon which these claims are based.

The named defendant, the Uniroyal Chemical Corporation (Uniroyal Chemical), is a publicly traded Delaware corporation, with its principal place of business located in Middlebury, Connecticut. The defendant Morgan Stanley and Company, Inc. (Morgan Stanley) is an investment banking firm located in New York City. The complaint also names as individual defendants Uniroyal Chemical's "controlling persons": Robert J. Mazaika, its chairman of the board, chief executive officer and president; John T. Stofko, its former vice president and chief financial officer; Charles E. Williams, its controller; and, Thomas M. Begel, Beri Bernhard, Harry Corless and Paul Kolton, each directors of Uniroyal Chemical.

In March, 1995, Uniroyal Chemical undertook a public offering of 13,350,000 shares of its common stock, priced at $12 per share. Morgan Stanley served as the co-lead underwriter for Uniroyal Chemical's initial public offering. In connection with this initial public offering, Uniroyal Chemical filed with the federal Securities and Exchange Commission (SEC) and disseminated to the public a registration statement and prospectus, effective March 16, 1995. Since the March 16, 1995 initial public offering, Uniroyal Chemical's common stock has been listed and traded on the National Association of Securities Dealers Automatic Quotation System (NASDAQ).

---

[1] Title 15 of the United States Code, § 77v (a), provides the federal and state courts with concurrent jurisdiction for claims brought under the 1933 act.

The complaint alleges three causes of action against all the defendants. In count one, the plaintiff alleges that the aforementioned registration statement and prospectus "contained untrue statements of material facts and omitted to state material facts required to be stated therein which were necessary to make the statements therein not misleading," in violation of § 11 of the 1933 act. Specifically, the plaintiff alleges thirteen distinct misrepresentations and omissions by the defendants regarding the prospectus. According to the plaintiff, these misrepresentations and omissions directly and proximately resulted in the price for Uniroyal Chemical's shares being "artificially inflated in the [initial public offering] and in the aftermarket during the Class Period," resulting in the plaintiff and members of the class sustaining "substantial damages." Count two of the complaint incorporates count one in its entirety, and further alleges that the defendants violated § 12 (2) of the 1933 act, 15 U.S.C. § 77*l* (2). In count three, the plaintiff incorporates count two in its entirety, further alleging that the defendants' conduct violated CUSA, General Statutes § 36b-2 et seq.

On June 21, 1996, Uniroyal Chemical and the individual defendants filed a motion to dismiss and a motion to strike the plaintiff's complaint, accompanied by a single memorandum of law in support of both motions. On June 24, 1996, Morgan Stanley filed a motion to dismiss and/or strike along with its own supporting memorandum of law. In its memorandum, Morgan Stanley incorporates the legal arguments and factual analysis contained in Uniroyal Chemical's memorandum, while also setting forth additional arguments in particular to Morgan Stanley. Thereafter, on September 4, 1996, the plaintiff filed a memorandum in opposition to the defendants' motions. On October 7, 1996, both Morgan Stanley and Uniroyal Chemical, with the individual defendants, filed reply memoranda. On October 15,

1996, the plaintiff filed a reply memorandum of law in further opposition to the defendants' motions.

On October 15, 1996, this court heard arguments on all pending motions. Based on the plaintiff's indicated ability to plead proper standing to sue, the defendants agreed to withdraw their respective motions to dismiss, and the court dismissed the same. Additionally, the court denied Uniroyal Chemical's motion to strike as its motion required the court to refer to documentation outside the complaint. See *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 348, 576 A.2d 149 (1990). As Morgan Stanley's motion to strike incorporated the arguments and factual analysis of Uniroyal Chemical, the court also, for the same reason, denied its motion to strike as to count one.[2] The only items remaining for the court to rule upon, therefore, are the additional arguments raised by Morgan Stanley regarding counts two and three of the plaintiff's complaint, as those counts relate to Morgan Stanley.[3]

"The function of a motion to strike is to test the legal sufficiency of a pleading . . . . See Practice Book § 152." *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996). A motion to strike contests "the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214–15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must

---

[2] On October 15, 1996, the court also denied the defendants' joint motion for a protective order regarding discovery, filed July 25, 1996.

[3] The parties subsequently filed additional documentation after oral argument. On October 23, 1996, Morgan Stanley filed a supplemental memorandum of law in support of its motion to strike. On October 25, 1996, the plaintiff filed a memorandum in response to Morgan Stanley's supplemental memorandum.

construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Id., 215. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996).

Morgan Stanley moves to strike count two of the plaintiff's complaint on the ground that the count fails to allege sufficient facts to impose liability on Morgan Stanley under § 12 (2) of the 1933 act. Specifically, Morgan Stanley claims that the plaintiff fails adequately to allege that he purchased his Uniroyal Chemical stock from or was solicited by Morgan Stanley.

Section 12 (2) of the 1933 act provides in pertinent part that any person who "sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him . . . ." See 15 U.S.C. § 77*l* (2).

In *Pinter* v. *Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988), the United States Supreme Court, in the context of § 12 (1),[4] clarified the meaning of the term "seller." Under *Pinter*, a person is a seller under § 12 (1) if it either: (1) passed title, or other interest in

---

[4] Section 12 (1) of the 1933 act provides in pertinent part that: "Any person who—(1) sells a security in violation of section 5 . . . shall be liable to the person purchasing such security from him . . . ." See 15 U.S.C. § 77*l*.

the securities at issue, to the buyer for value; or (2) successfully solicited the purchase of the securities, motivated at least in part to serve its own financial interests or those of the securities owner. Id., 642–43. "Under *Pinter*, both direct sellers and those who engage in the active solicitation of an offer to buy can be 'sellers' for purposes of section 12 (1)." *In re Westinghouse Securities Litigation*, 90 F.3d 696, 716 (3d Cir. 1996) (*Westinghouse*).

"Although the Supreme Court did not 'take a position on' the scope of a 'seller' for purposes of section 12 (2) . . . [courts] have held the language of sections 12 (1) and 12 (2) is identical in meaning";[5] *Capri* v. *Murphy*, 856 F.2d 473, 478 (2d Cir. 1988); and thereby have extended the holding of *Pinter* to § 12 (2) claims. See *Commercial Union Assurance Co., PLC* v. *Milken*, 17 F.3d 608, 616 (2d Cir.), cert. denied, 513 U.S. 873, 115 S. Ct. 198, 130 L. Ed. 2d 130 (1994); *Cortec Industries, Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 49 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992); *Wilson* v. *Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir. 1989). As such, a § 12 (2) seller "includes the person 'who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.' " *Commercial Union Assurance Co., PLC* v. *Milken*, supra, 616, quoting *Pinter* v. *Dahl*, supra, 486 U.S. 647.

In determining whether the plaintiff has sufficiently pleaded a § 12 (2) claim against Morgan Stanley, the

_____

[5] "The two provisions differ in that under § 12 (1), one who offers or sells [a nonexempt] unregistered security . . . is strictly liable to the purchaser. . . . Section 12 (2) creates liability for one who offers or sells a security by means of a prospectus or oral communication that contains a material misstatement or omission. Under § 12 (2), however, a defendant can avoid liability by proving he did not know, or through the exercise of reasonable care could not have known, of the untruth or omission." (Citation omitted.) *Craftmatic Securities Litigation* v. *Kraftsow*, 890 F.2d 628, 635 n.9 (3d Cir. 1989).

court finds persuasive the analysis set forth in *In re Westinghouse Securities Litigation*, supra, 90 F.3d 696.[6] In *Westinghouse*, the plaintiffs' § 12 (2) allegations failed to make clear which defendants were direct sellers as opposed to solicitor sellers. Id., 717. The plaintiffs also failed to allege any facts suggesting how the defendants directly and actively participated in the solicitation of the plaintiffs' immediate purchases of Westinghouse stock. Id., 716. Nevertheless, the *Westinghouse* court reversed the District Court's order dismissing the plaintiffs' § 12 (2) claim, stating that, in order to meet its burden of pleading, the "plaintiffs must provide a short and plain statement showing that the underwriter defendants are statutory sellers and that the plaintiff purchased securities from them." Id., 718.

In the present case, the plaintiff alleges that Morgan Stanley "served as co-lead underwriter of [Uniroyal Chemical's] March 16, 1995 [initial public offering], obtaining an underwriting fee from the [initial public offering] proceeds." The plaintiff alleges that Morgan Stanley was the beneficial owner of a substantial amount of Uniroyal Chemical common stock, and that "Morgan Stanley therefore also directly benefited from the [initial public offering] not only by the creation of a market for its stock (worth approximately $17 million), but also from the immediate decrease in negative equity and increase in book value of $51.53 per share, or approximately $72 million."

---

[6] The court recognizes that "[t]he decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of a federal statute . . . particularly . . . where the federal statute confers concurrent jurisdiction on the federal and state courts." (Internal quotation marks omitted.) *Red Maple Properties* v. *Zoning Commission*, 222 Conn. 730, 739 n.7, 610 A.2d 1238 (1992) (court interpreting 42 U.S.C. § 1983 cases). No Second Circuit decision, however, sufficiently addresses the issue presented to the court, namely, whether count two of the present complaint adequately alleges that Morgan Stanley is a statutory seller under § 12 (2) of the 1933 act.

In the complaint, the plaintiff alleges that the "[d]efendants offered, sold, or solicited for financial gain all the common stock sold to plaintiff . . . ." The plaintiff further alleges that "[t]he defendants' actions of solicitation included participating in the preparation and dissemination of the false and misleading Registration Statement and Prospectus, participating in the dissemination of such misrepresentations through an orchestrated series of oral communications and presentations and by developing, orchestrating and using a system of underwriters and selling broker-dealers to distribute, market and sell the Uniroyal common stock in the [initial public offering]. The solicitation by defendants was designed in part to serve their own financial interests . . . the financial interest in protecting the value of their significant ownership of Uniroyal Chemical common stock."

The court finds that the plaintiff has sufficiently alleged that the defendants, including Morgan Stanley, were § 12 (2) "sellers" and that the plaintiff purchased his stock from the defendants, including Morgan Stanley. Count two of the plaintiff's complaint alleges, inter alia, that the defendants offered, sold or solicited the plaintiff to purchase Uniroyal Chemical common stock, and that in so doing, the defendants were motivated at least in part by a desire to serve their own financial interests. Taken in the light most favorable to the plaintiff, count two of the complaint sets forth sufficient facts to support a cause of action under § 12 (2) of the 1933 act. *In re Westinghouse Securities Litigation*, supra, 90 F.3d 717; see also *Degulis* v. *LXR Biotechnology, Inc.*, 928 F. Sup. 1301, 1315 (S.D.N.Y. 1996); but see *Shaw* v. *Digital Equipment Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996). Morgan Stanley's motion to strike count two, therefore, is denied.

Morgan Stanley moves to strike count three of the complaint in that it fails to allege a cause of action

under CUSA against Morgan Stanley. Specifically, Morgan Stanley claims that the plaintiff "fails to allege how it is that Morgan Stanley 'materially assisted' in the sale of the Uniroyal Chemical securities at issue in violation of Connecticut General Statutes § 36b-29 (a) (2)."

Section 36b-29 (a) (2), formerly General Statutes § 36-498,[7] provides in pertinent part that any person who "offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission . . . is liable to the person buying the security . . . ."

"[T]he language of [General Statutes (Rev. to 1993)] § 36-498 (a) is based on § 12 (2) of the [1933 act] . . . ." *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 332, 659 A.2d 1166 (1995). Tracking the language found in § 2 (3) of the 1933 act, 15 U.S.C. § 77b (3), General Statutes § 36b-3 (11) provides the following definitions: "(A) 'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. (B) 'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."

"Although CUSA and the federal securities laws are not identical, in interpreting CUSA it is instructive to look to rulings of the federal courts interpreting federal securities law, particularly where the language of CUSA is similar to that of the federal law." *Rota* v. *Colonial Realty*, Superior Court, judical district of Hartford-New Britain at Hartford, Docket No. CV920505840S (July 16,

[7] General Statutes § 36-498 was transferred to § 36b-29 in 1995.

1996). Therefore, "in the absence of state authority to the contrary, [§ 36b-29] will be interpreted similarly . . . ." *Capri* v. *Murphy,* supra, 856 F.2d 479; see also *In re Colonial Ltd. Partnership Litigation,* 854 F. Sup. 64, 100 (D. Conn. 1994).

Count three of the plaintiff's complaint incorporates the allegations of count two. The court has already determined under count two that the defendants, including Morgan Stanley, were "sellers" for purposes of § 12 (2). Accordingly, the court finds that the allegations as set forth in count three sufficiently allege that Morgan Stanley was a "seller" for purposes of § 36b-29 (a) (2). The court need not address, therefore, whether Morgan Stanley "materially assisted" Uniroyal Chemical in the sale of its securities.[8] Morgan Stanley's motion to strike count three is denied.

---

[8] "In 1993 . . . the legislature amended § 36-498 (a) to extend liability, inter alia, to a party who offers or sells *or materially assists any person who offers or sells* a security . . . . Public Acts 1993, No. 93-169." (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi,* supra, 233 Conn. 335; see also *In re Colonial Ltd. Partnership Litigation,* supra, 854 F. Sup. 100. Prior to this amendment, the language found in § 36-498 (a) was nearly identical to that of § 12 (2) of the 1933 act. *In re Colonial Ltd. Partnership Litigation,* supra, 100.