[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE (#103)
The Plaintiff Kent Winford ("Winford") has brought this action in nine counts against the Defendant Advest, Inc. ("Advest"). The operative complaint is the First Revised Complaint dated July 11, 2000. The Defendant Advest has moved to strike the following counts: First Count (Breach of Contract); Second count (Breach of Fiduciary Duty); Third Count (Violation of Connecticut Uniform Securities Act, General Statutes § 36b-2 et seq.); Fourth Count (Breach of the Covenant of Good Faith and Fair Dealing); and Eighth Count (Violation of Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The lengthy hearing on this motion occurred at the December 11, 2000 short calendar.
A motion to strike is the proper vehicle to contest the legal sufficiency of the allegations of any complaint, counterclaim or cross-complaint, or of any prayer for relief therein. Practice Book CT Page 15764 § 10-39. A motion to strike admits all well pleaded allegations and those facts necessarily implied therefrom. Amodio v. Cunningham,182 Conn. 80, 82-83 (1980). "If the facts provable under the allegations would support a defense or cause of action, the motion to strike must fail." Ferryman v. Groton, 212 Conn. 138, 142 (1989). Only the grounds specified in the motion may be considered. Meredith v. Police Commission,182 Conn. 138, 140 (1980). Mere conclusions of law, absent supporting factual allegations, are insufficient. Cavallo v. Derby Savings Bank,188 Conn. 281, 285-86 (1982)
 I. FIRST COUNT: BREACH OF CONTRACT 
The complaint (Paragraph 4) alleges a contract, express or implied, entered into on or about November 1996 between the Plaintiff and Mark Kottler ("Kottler") and Steven Sims ("Sims") to undertake the ultimate formation of Target Capital Partners, Inc. ("TCPI"), for certain business and investment purposes; see, e.g., Paragraphs 15, 19, 20; and that until its subsequent formation, Kottler, Sims and the Plaintiff conducted business as Target Capital Partners ("TCP"). It is neither alleged nor claimed that Advest was a party to this contract.
Paragraphs 8 and 9 of the complaint purport to refer to an alleged contractual relationship between the Plaintiff and Advest. Paragraph 8 refers to an "engagement agreement," set forth as Exhibit A to the complaint, forwarded by Advest on or about January 3, 1997, "outlining the terms of the services to be provided by Advest to Mr. Winford." Paragraph 9 refers to a revised agreement, set forth as Exhibit B to the complaint, forwarded by Advest on or about January 9, 1997, "outlining the terms of the services to be provided by Advest to TCP/TCPI."
Exhibits A and B were not annexed to the complaint. However, by agreement of counsel at the hearing, the Court was furnished with copies of Exhibits A and B, with consent to consider them as part of the complaint as so alleged therein. This use is permitted by Practice Book § 10-29. These Exhibits have been marked as submitted at the December 11, 2000 hearing for inclusion in the file as the Exhibits referred to in the operative complaint.
Exhibit A is addressed to "Mr. Kent K. Winford, President, Target Re, Ltd." Although signed on behalf of Advest, Exhibit A is not signed by anyone else. There are three sets of lines under the caption "Agreed and Accepted [on behalf of] Target Re, Ltd," each set containing a line for the signature of the person so signing on behalf of Target Re, Ltd., and a line for insertion of that person's title. Thus, it does not appear CT Page 15765 that it was intended that these persons were to be signing in their individual capacities.
Exhibit B is addressed to "Mr. Mark Kottler, Chairman, Target Capital Group." It bears a signature on behalf of Advest, and, similar to the signature page format on Exhibit A, three sets of lines under the caption "Agreed and Accepted [on behalf of] Target Capital Partners" for signature and insertion of that signatory's title. These sets bear the signatures on behalf of Target Capital Partners respectively of Kottler as Chairman, Sims as Executive Vice President, and Winford as Executive Vice President. Clearly, Exhibit B is not signed, nor does it purport to be so signed, by either Winford, Kottler or Sims in their individual capacities.
Advest avers that its motion to strike the First Count must be granted because the complaint, as supplemented by Exhibits A and B, neither alleges nor provides that the Plaintiff was a party to any contract with Advest. The Court concurs. Whatever his interest may have been in the partnership and subsequent corporation, or by reason of his foregoing alleged contract with Kottler and Sims, the Plaintiff was not a signatory to Exhibit B in his individual capacity, and thus is not a party to it. Because the Plaintiff is not a party to the contract, he may not assert a claim against Advest for breach of the contract. Coburn v. Lenox Homes,Inc., 173 Conn. 567, 570 (1977).
Perhaps in recognition of this obstacle, Plaintiff in his opposition memorandum dated October 24, 2000 purports (page 3) to claim that he is a direct or third party beneficiary of the contract. "The proper test to determine whether a [contract] creates a third party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party." (Emphasis in original.) Gateway Co. v. DiNoia, 232 Conn. 223, 231
(1995), citing Knapp v. New Haven Road Construction Co., 150 Conn. 321,325 (1963). "[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." (Emphasis in original.)Grigerik v. Sharpe, 247 Conn. 293, 315 (1998), quoting Stowe v. Smith,184 Conn. 194, 196 (1981)
The complaint fails to allege, nor does Exhibit B so provide, that the Plaintiff was an intended beneficiary of the contract between Advest and Target Capital Partners. Facts not alleged in the complaint cannot be considered in ruling on a motion to strike. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 214, 215 (1992)
The motion to strike the First Count of the complaint is granted. CT Page 15766
 II. FOURTH COUNT: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING 
This count is effectively disposed of by the Court's above ruling that no contract as alleged existed between Advest and the Plaintiff. The doctrine of the covenant of good faith and fair dealing is essentially a rule of construction of existing contracts. Verrastro v. Middlesex Ins.Co., 207 Conn. 179, 190 (1988), quoting Magnan v. Anaconda Industries,Inc., 193 Conn. 558, 567 (1984). Absent, as here, the necessary contractual component, the doctrine does not apply. Hoskins v. TitanValue Equities Group, Inc., 252 Conn. 789, 793 (2000)
The motion to strike the Fourth Count is granted.
 III. SECOND COUNT: BREACH OF FIDUCIARY DUTY 
The Second Count purports to allege that Advest breached a fiduciary duty owed to the Plaintiff. "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." (Internal quotation marks omitted.) Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,255 Conn. 20, 38 (2000), quoting Konover Development Corp. v. Zeller,228 Conn. 206, 219 (1994)
Not all business relationships implicate the duty of a fiduciary. Hi-HoTower, Inc. v. Com-Tronics, Inc., supra, 255 Conn. 20, citing Hemingwayv. Coleman, 49 Conn. 390, 391 (1881) In cases recognizing the existence of a fiduciary relationship, "the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." Hi-Ho Tower, Inc. v.Com-Tronics, Inc., supra, 255 Conn. 20. See, e.g., Dunham v. Dunham,204 Conn. 303, 305 (1987)
The Defendant contends that the Second Count does not adequately allege facts that Advest owed any duty to the Plaintiff, as its duty was solely with the partnership (Target) of which Plaintiff was a partner. Advest bases this contention, at least in part, on the ground that the Plaintiff was not a party in his individual capacity to any contractual relationship with Advest, and that therefore there was nothing upon which to support a fiduciary relationship. CT Page 15767
Plaintiff apparently bases his fiduciary duty claim on the allegation that Advest acted as an investment advisor. Paragraph 37 of the Second Count provides in part that "Advest, as an investment advisor to the founding partners owed each a fiduciary duty. . . ." Paragraph 40 of this count alleges that "[a]t all times material hereto, the plaintiff relied on the advice and instruction of Advest to protect his equity interest in TCP/TCPI and took no further action to protect his equity interest in TCP/TCPI."
The term "investment advisor" is defined in the Connecticut Uniform Securities Act ("CUSA"), General Statutes § 36b-1 et seq. Section 36b-3
(10) of the Act defines term "investment advisor" in pertinent part as follows: "(10) `Investment advisor' means any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing or selling securities. . . ."
Other than the conclusory allegation of Paragraph 37, there is nothing in the complaint, as supplemented by Exhibit B thereto, that Advest was acting as an investment advisor to the Plaintiff in his individual capacity or otherwise owed him a fiduciary duty.
The motion to strike the Second Count is granted.
 IV. THIRD COUNT: VIOLATION OF CUSA 
The foregoing ruling on the Second Count applies to this Third Count. Even if it can be construed that Advest was acting for compensation as an investment advisor to the Plaintiff, the Court concurs with the Defendant that the allegations of the complaint do not support a claim of a violation of CUSA.
Section 36b-5 of CUSA prohibits certain activities of investment advisors and persons who solicit advisory business on behalf of investment advisors. Subsection (a) prohibits such activity by any person "who directly or indirectly receives compensation or other remuneration for advising another person as to the value of securities or their purchase or sale. . . ." A party's remedy for a violation of § 36b-5
is set forth in § 36b-29, entitled "Buyer's Remedies."
Plaintiff does not allege that he was a buyer of any securities, or that Advest advised him "as to the value of securities or their purchase or sale." Gorga v. Uniroyal Chemical Corp., 45 Conn. Sup. 24 (1996), cited by Plaintiff, concerned an action against an investment banking CT Page 15768 firm involved in the public issuance and sale of securities, and is inapposite. Plaintiff's claim is that by a scheme to which Advest was a party he was precluded from acquiring an equity interest in TCP/TCPI to which he claims he was entitled (Paragraphs 42, 43). While this conduct may or may not be otherwise actionable, it is not a violation of CUSA.
The motion to strike the Third Count is granted.
 V. EIGHTH COUNT: VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT 
The Eighth Count alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq. Section 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice is unfair or deceptive, our Supreme Court has adopted the criteria set out in the "cigarette rule" by the Federal Trade Commission, as follows:
 (1) [W]hether the practice without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]
A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990), quoting Conaway v. Prestia, 191 Conn. 484, 492 (1983), in turn quotingFTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5 (1972)
In order to allege a CUTPA violation properly, the Plaintiff must allege, inter alia, that the acts complained of were performed in the conduct of a trade or commerce. General Statutes § 42-110b (a);Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669 (1992). "A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." S.M.S. Textile Mills, Inc.v. Brown, Jacobson, Tillinghast, Lahan King, P.C., 32 Conn. App. 786,797 (1993).
The Eighth Count alleges that Advest was engaged in trade or commerce CT Page 15769 (Paragraph 42); that Advest, acting together with Kottler, Sims and TCP/TCPI[1], conspired to prevent Plaintiff from benefitting from the business of TCP/TCPI by committing acts that were deceptive, fraudulent and manipulative (Paragraph 43); that the actions of Advest constituted a violation of § 42-110b (Paragraph 44); and that by reason thereof Plaintiff has suffered a loss of money and/or property (Paragraph 45). These allegations sufficiently allege a CUTPA claim.
The motion to strike the Eighth Count is denied.
 VI. SUMMARY 
The motion to strike is granted as to the First, Second, Third and Fourth Counts, and is denied as to the Eighth Count.
David L. Fineberg Superior Court Judge