### HUDSON COUNTY COURT OF COMMON PLEAS.

LELA SCHROEDER, PETITIONER-APPELLEE, v. HATFIELD WIRE & CABLE CO., RESPONDENT-APPELLANT.

Decided February 3, 1947.

For the petitioner-appellee, *Harry Indursky.*

For the respondent-appellant, *Alfred J. Orth.*

DREWEN, C. P. J. Petitioner, while in respondent's employ, fell backwards over a box and sustained injury to her right leg and to her back on the right side below the belt. Upon the hearing in the Bureau the back injuries only were involved in the claimed disability. The evidence of disability is largely subjective. Petitioner testifies that she experiences a constant ache in the indicated point in her back; that it bothers her if she does heavy work; that she cannot sit too long at one time or in one position. She says: "When I sit too long it is not severe, but I can't explain it. I get so restless that I have to move." This is the extent of her complaint, so she testifies.

The accident occurred November 9th, 1945. The claim for resulting injuries came before the Bureau for hearing on May 27th, 1946. Previously the petitioner had an accident while in the employ of the Western Electric Company. This occurred August 3d, 1944. The claim arising thereunder came before the Bureau for hearing on September 11th, 1945. The four dates last mentioned are important. For the prior accident an award was made and paid of eight (8%) per cent. of total. For the claimed injury now before us the award in the Bureau is two (2%) per cent. of total, and from this award respondent appeals.

Petitioner's medical expert is Dr. Visconti, who was her expert also in the former hearing. He diagnoses the present injury as the residual effect of a contusion of the lower back superimposed upon a previously traumatized back; and he estimates disability at five (5%) per cent. of total attributable to the second accident. Petitioner's present disability, referrable to both accidents, he estimates at fifteen (15%) per cent. of total. It will be seen therefore that the problem submitted on this appeal is one of determining as correctly as possible, upon the basis of the credible evidence, how much of petitioner's disability, if any, is ascribable to the second accident. The burden of proof is upon petitioner. The two traumas were inflicted upon the same region of the back.

Close scrutiny of the record reveals something of a tissue of contradiction that challenges belief. In the nature of the issue presented, petitioner's interest lies in minimizing the enduring effect of the first injury with correlative maximizing of the effects of the second injury. To this interest her testimony is obviously addressed. The court must adjudge the credibility with which it is done. A transcript of the testimony taken on the hearing of the first claim was admitted into evidence and is part of the record before us.

In the present hearing petitioner testified that when she returned to work after her first injury she was "feeling fine," but according to the transcript she testified at the former hearing that she never returned to work for the Western Electric Company; that her first employment after the injury was with the Broadway Hosiery, which she had to give up because she could not stand the work; that she then took employment with the Jersey City Printing Company, where she remained only three days, having to leave there because she was confined to her bed for a week and a half, being unable to stand. Whether or not she returned to work for the Western Electric Co. is not important; but her statement that, upon resuming employment after her first injury and before the second one, she was "feeling fine" is quite important, for from it we must conclude that she falsified at the first hearing or that she falsifies here. Categorically she states in the present hearing that in September, 1945 (two months before the second injury), she no longer had any pain. But on September 11th, 1945, testifying in the former hearing, she described her then continuing pain very definitely and in explicit detail. "I always have a pain" she then said. At the time of that hearing she had not yet been able to return to work, and was then wearing a belt, giving as the reason that when she did not wear it her back did not feel "too good." Petitioner's statement in the present case that she had no pain in September, 1945, was sharply emphasized to her by counsel's next question, whereupon she made the qualification that in September, 1945, she had "slight pain, but not like I have now."

It is not disputed that the complaints of pain and disability made by petitioner contemporaneously with her respective injuries are the same in both cases; and this is specifically confirmed by the testimony of Dr. Visconti, who examined petitioner for the two hearings.

Following her first accident, petitioner was fitted with the medical belt or corset above-mentioned, and in the first hearing she described her need for it, saying that she dispensed with it only when extremely hot weather made its use too burdensome. Although she testified first that she had no pain in September, 1945, and secondly that she had "slight pain, but nothing like I have now," it is undeniable that at the hearing on September 11th, 1945, she wore the belt, saying she could not well do without it, while at the hearing of the present case she wore no belt. When it was elicited from her that she was also without the belt in March, 1946, when Dr. Koppel examined her for respondent, she quickly volunteered the statement: "I could clear the whole thing up by saying I don't wear the belt." Her reason, however, for no longer wearing it she did not give.

After her first injury she did not return to the Western Electric, saying that she was unable to do the work. But neither did she return to her employment with the present respondent, though she admits that her work there was "very light;" and her failure to return remains unexplained.

From the hypothetical question pursuant to which Dr. Visconti states his diagnosis and estimates the extent of disability, there is omitted the very important factor of petitioner's marked improvement, if not her freedom from disability, on her own statement, in September, 1945. On March 23d, 1945, Dr. Visconti made his examination for the Western Electric hearing; and at that hearing on September 11th, 1945, he held to his original estimate of twelve and one-half ($12\frac{1}{2}\%$) per cent. of disability, notwithstanding the marked improvement now reported by petitioner herself. And when asked concerning such adherence, notwithstanding the improvement, the doctor answered, not by saying he was unaware of the improvement, but that he was not asked about it.

As already noticed, the question here is not really one of measuring disability at all, but rather one of finding for the disability established the true cause or causes. Admittedly, under the circumstances, this is very difficult to do. Dr. Visconti says so. It certainly cannot be done by prodigious *non sequiturs* and assumptions. There is much of "I feel" and "I take it" and "It is reasonable to assume" (with no basis for the assumption), and the like. For illustration we quote from Dr. Visconti's testimony, page 32, bottom:

"I had estimated previously on March 23d, 1945, as a result of the first accident the disability was $12\frac{1}{2}$ per cent. of total. I take it that she did improve somewhat since that time but, however, there was still some residual as a result of that accident in question. My best opinion is that 5 per cent. of total can be reasonably attributed to the second accident."

And again, at page 38:

"Q. Having that in mind, doctor, isn't it exceedingly difficult to determine in your mind whether these differences in findings, having in mind that her complaints were essentially the same—whether these differences in findings were due to a residual disability occurring back in August, 1944, and may be due to the ordinary changes that one would expect between different dates of examination, or whether they were due to a new incident? A. I would say yes, it is difficult. However, we do have a definite second accident, a definite period of treatment, a condition wherein she prevents (*sic.* probably should read *presents*) objective findings. So, therefore, it is reasonable to assume that at least 5 per cent. can be attributed to that accident."

Our credence does not follow this. Though the testimony be given in the best of good faith, where, as here, the patient's condition is so largely determinable by what the patient herself says of it, and by that alone, dissuasion by the patient can be stronger than persuasion by the doctor. Her credibility is more important than his, as much so, at least; and where the ordinary tests of accuracy and veracity render her testimony utterly repugnant as they do in this instance, there can be but one result.

As against petitioner's proofs we have the testimony of respondent's experts, Drs. Watman and Koppel, the former of whom examined petitioner after each accident. Dr. Watman estimates disability at three (3%) per cent. of total regardless of cause, and says there is now manifested a slight improvement of the condition he saw following the first accident. The effect of this is two-fold. It tends to combat petitioner's claim that she was feeling fine prior to the second injury, as well as the claim that that injury caused added disability. Dr. Koppel examined petitioner March 29th, 1946, and estimated disability at three (3%) per cent. of total regardless of cause.

The findings of the Deputy Commissioner are against the weight of the credible evidence. The petitioner has not borne her burden of proof. Her petition is dismissed.