[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTIONS TO STRIKE AND MOTION TOTRANSFER
On March 31, 1981, the plaintiff, as lessee, entered into a written lease for a portion of certain premises with Hadknight Company, the predecessor in title to the defendant Sea Shell Associates. The lease was for a term of five years, with the right to extend the lease for an additional five years. The plaintiff was given the additional right to negotiate for a further extension of the lease in accordance with provisions not relevant to the instant case.
The lease contained two additional provisions pertinent to the resolution of this case Paragraph twentieth of the lease provided:
 "In the event that the tenant shall remain in the demised premises after the expiration of the term of this lease without having executed a new written lease with the landlord, such holding over shall not constitute a renewal or extension of this lease. The landlord, may, at its option, elect to treat the tenant as one who has not removed at the end of his term, and thereupon be entitled to all the remedies against the tenant provided by law in that situation, or the landlord may elect, at its option, to construe such holding over as a tenancy from month to month, subject to all the terms and conditions of this lease, except as to duration thereof, and in that event the tenant shall pay monthly rent in advance at the rate provided herein as effective during the last month of the demised term"
Addendum paragraph A-6, Sale of Premises, provided:
 "In the event that, at any time during the lease term, Landlord shall receive a bona fide offer from any person to purchase the premises of which the leased premises form a part and/or adjoining property owned by Landlord as more fully described in a deed recorded in the Cheshire Land Records in Volume 225 at Page 161, Landlord shall give Tenant notice of the price and terms of such offer and of the intention of CT Page 522 Landlord to accept the same. Tenant shall have the right for 15 days thereafter to purchase the leased premises in its own name or in the name of a nominee, for the purchase price and on the terms specified in Landlord s notice. If Tenant shall not so elect within the stated period Landlord may then sell the leased premises to said third person provided such sale is on the same terms and conditions and for the price set forth in the notice to Tenant. This provision shall not apply to transfers between members of Landlord's partners' family or to a family trust."
It is conceded, for purposes of these proceedings, that the plaintiff exercised its option to extend the lease at the end of the first five-year period. It is undisputed that at the end of the second five-year period, there was no formal extension of the lease for any additional period of time, but rather that the plaintiff continued to occupy the premises, and that the defendant Sea Shell construed this holding over as a month-to-month tenancy as it was entitled to do under paragraph twentieth of the lease.
On March 29, 1996, the defendant Sea Shell conveyed the premises to the defendant Sand Dollar Development Group, LLC. The plaintiff was not informed of this transaction until after it had occurred, and the gravamen of its present complaint is that it was denied its contractual "right of first refusal" pursuant to Addendum paragraph A-6. Count One of the complaint seeks a decree ordering the defendant Sand Dollar to convey the premises to the plaintiff for $75,000, the amount Sand Dollar paid to Sea Shell for the purchase. Count Two seeks damages for expenses it has incurred in order to maintain possession of the premises after Sea Shell's conveyance to Sand Dollar, specifically the costs of defending against a summary process action currently pending in the Housing Session of the Superior Court in New Haven. Count Three asserts a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.
Both defendants have moved to strike all three counts of the plaintiff's complaint for failure to state a claim upon which relief may be granted as a matter of law. The defendant Sand Dollar has also moved to transfer this case to the Housing Session where it may be consolidated with the pending summary process action.
The court first considers the defendants' motions to strike. CT Page 523 "The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted.'" Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25
(1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id., 215. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. The motion "admits all facts well pleaded."Ferryman v. Groton, 212 Conn. 138, 142 561 A.2d 432 (1989). A motion to strike "does not admit legal conclusions or the truthor accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS. Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). The defendant McManus now moves to strike the claim for relief as to rescission and to strike ¶ 11(d) of the third revised complaint because it fails to state a cause of action for intentional infliction of emotional distress. "The purpose of a motion to strike is to `contest . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'" Novametrix MedicalSystems. Inc v. BOC Group. Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992) "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id., 215. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. The motion "admits all facts well pleaded,"Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989) but "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS. Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985).
Resolution of the defendants motions to strike depends upon the construction of two provisions in the lease. Paragraph Twentieth of the original preprinted lease provides that at the end of the original lease term (five years), or, presumably, any agreed upon extension, which in this case was for an additional five years, the landlord may construe any holding over "as a tenancy from month-to-month, subject to all the terms and conditions of this lease, except as to duration thereof. . . ." Addendum paragraph A-6 provides, in pertinent part, that if "At any time during the lease term, the landlord receives a bona fide
offer of purchase, the landlord shall give the tenant notice, after which the tenant `shall have the right for fifteen days thereafter to purchase the lease premises in its own name. . . .'" (Emphasis added.)
The question before the court therefore is whether once the CT Page 524 five year extension of the original five-year term of the lease had concluded, without an additional formal extension, the plaintiff still retained its "right of first refusal"? The plaintiff argues that because Paragraph Twentieth construes the holdover month-to-month tenancy as encompassing "all the terms and conditions of this lease", the right of first refusal was preserved in the ongoing month-to-month tenancy. The defendants argue that the right of first refusal is conditioned upon Sea Shell's receiving ". . at any time during the lease term . . . abona fide offer from any person to purchase the premises. . ." and Paragraph Twentieth specifically states that the holdover month-to-month tenancy while subject to all other terms and conditions of the lease, excepts the "duration thereof". Therefore, they argue, it cannot be said that Sand Dollar's offer to purchase, which apparently occurred sometime during 1996[1], occurred, as is required by Addendum paragraph A-6, "during the lease term." Because, contend the defendants, the original lease itself expired at the end of the five-year extension, that lease, and its term, ended on March 31, 1991. The month-to-month tenancy that followed specifically represents not a continuation or extension of the same lease, but rather a new month-to-month tenancy, which, as is conceded by all parties, included all of the basic terms and conditions of the original lease, but not its duration.
The plaintiff's response is that even if the original lease terminated, the specific language that incorporated all of the terms and conditions of the lease, including the "right of first refusal" contained in the Addendum, means that the plaintiff has the right to exercise that right of first refusal during any month in which its tenancy was in existence. Because the month-to-month tenancy had been renewed regularly up through the time of the sale of the premises, and certainly during the period in which the offer to purchase was received, the plaintiff argues that it was denied its contractual rights and that it therefore has stated a claim upon which relief may be granted.
The parties agree that there is no Connecticut case precisely on point, but a number of other courts have suggested that a purchase option or right of first refusal does not survive the expiration of the formal lease term and conversion into a holdover month-to-month tenancy. White Castle Systems Inc. v.Blohm, 807 F.2d 313 (2nd Cir. 1986); Gulf Oil Corp. v. BuramRealty Company, 11 N.Y.2d 223, 182 N.E.2d 608 (N.Y. 1962);Carroll v. Daigle, 463 A.2d 885 (N.H. 1983); Douglas v. Jones,
CT Page 525422 So.2d 352 (Fla.App. 1982); Grisham v. Lowery, 621 S.W.2d 745
(Tenn.App. 1981); Vernon v. Kennedy, 273 S.E.2d 31 (N.C.App. 1981); Andreula v. Slovak Gymnastic Union Sokol Assembly,
No. 223, 53 A.2d 191 (Court of Errors and Appeals of N.J. 1947).Powertest Petroleum Distributors v. Baker-Tripi Realty Corp.,
48 N.Y.S.2d 619 (Sup. 1984), involved lease terms almost identical to those in the present case. The court there held that the option to purchase did not carry over into the month-to-month tenancy.
The plaintiff has attempted to counter these cases withBalsham v. Koffler, 73 A.2d 272 (N.J. Super 1950), which is readily distinguishable by the fact that in Balsham, the rental payment, including that which obtained during the holdover period, included not only $50 per month toward rent but also an additional $5 per month specifically designated to go toward the purchase price as set forth in the purchase option. There, the court found that the landlord's acceptance of the extra $5 per month had the effect of continuing the option to purchase Arditov. Howell, 51 A.2d 8, 59 (Del. 1947), also cited by the plaintiff, is distinguished by the fact that the lease provided that any holding over after the original lease term would be considered an automatic extension for an additional year under the same terms and conditions, provisions which are quite different from those in the instant case.
The "right of first refusal" at issue in this case is expressly conditioned upon the landlord's receiving a bona fide
offer to purchase "at any time during the lease term." It is apparent from the first page of the lease, in the paragraph headed "Term" that the "term of this demise shall be for five (5) years." It is also clear from Addendum paragraph A-1 that the tenant has the right to extend the term for an additional five-year period and that "the five year extension shall be upon the same terms, covenants and conditions as in this lease provided, except that . . . there shall be no further privilege of extension." For purposes of this provision, the court views the word "term" as being synonymous with "duration". Because the plaintiff has made no allegation that the offer to purchase was received by the landlord during the original five-year term of the lease or its subsequent five year extension, the plaintiff has not set forth a claim upon which relief may be granted because the "right of first refusal" may only be triggered by an offer made during the term of the lease, which is the one condition of the original lease that is not carried over into the CT Page 526 holdover month-to-month tenancy. Because the parties have specifically provided in the lease that the condition which would trigger the plaintiff's right of first refusal must have occurred during the term of the lease and because that condition, the bonafide offer of purchase, did not occur until the termination of the lease and its replacement by a holdover month-to-month tenancy that did not incorporate the duration of the original lease into its terms and conditions, the plaintiff did not have a right of first refusal with respect to any offer of purchase made after March 31, 1991. Because the plaintiff has not alleged that Sand Dollar's offer to Sea Shell occurred prior to that date, it has not stated a claim upon which the relief it seeks in the first count, conveyance of the property to it in accordance with its right of first refusal, may be granted.
The plaintiff's claimed right of first refusal is the linchpin of this case. If, as this court has just determined, it has not stated a claim that it had such a right with respect to Sand Dollar's offer to Sea Shell, then it must also be concluded that it has not stated a claim upon which relief may be granted as to the second and third counts as well.
Despite having granted the defendants' motion to strike, the court will nonetheless consider the defendant Sand Dollar's motion to transfer the case to the Housing Session because, upon the granting of a motion to strike the plaintiff retains the right to plead over in accordance with Practice Book § 157.
At the time that the plaintiff was filing the instant action Sand Dollar was also instituting a summary process action against Peter-Michael in the Housing Session. (Sand Dollar DevelopmentGroup. LLC v. Peter-Michael Inc., Docket No. SPNH-9610-48736.) The notice to quit in the housing case was dated September 19, 1996 and served on September 24, 1996. The writ, summons and complaint in the housing case was dated October 8, 1996 and was served on October 11, 1996 with an October 24, 1996 return date. The writ in this case was dated September 24, 1996, served on September 25, 1996 and filed on October 8, 1996. It bears an October 15, 1996 return date.
Sand Dollar argues that this case, involving as it does a dispute between landlord and tenant, is a housing matter within the meaning of General Statutes Sec. 47a-68 (" . . .`housing matters' means . . . (b) all actions for back rent, damages, return of security deposit and other relief arising out of theCT Page 527parties' relationship as landlord tenant or owner occupant . . ." (Emphasis added). Based on that definition and the provisions of General Statutes Sec. 47a-70,[2] it contends that this case should therefore be transferred to the housing session where it may be consolidated with the pending summary process action.;
The plaintiff resists, arguing that this is not a traditional housing matter. A review of the pleadings makes it abundantly clear, however that the plaintiff is seeking "relief arising out of the parties' relationship as landlord-tenant or owner-occupant." As to the plaintiff's claimed concern that issues of the sort raised by this case would be too difficult or complex for the housing session, a review of decisions of the housing session over the last few years shows that the judges of this division of the Superior Court have capably resolved a wide variety of no less complex legal issues arising out of the landlord-tenant relationship. The issues raised by this case are well within the mainstream of those decisions, and that court is a proper venue for the resolution of those issues, should the plaintiff plead over.
The plaintiff has cited two early housing session cases which were transferred to the regular docket to be consolidated with cases already pending there. See, Esposito v. Stamatien, SPNH 8210-2775 (N.H. Housing Session No. 160, Harrigan, J., June 2, 1983) and Dorman v. Welch, SPNH 8303-3814 (N.H. Housing Session No. 142, Harrigan, J., March 23, 1983). The facts of those cases do not make them impressive precedents for the proposition advocated by the plaintiff here, and this court declines follow them. Moreover, the notion that the housing session exists for the resolution of simple summary process matters only is rightly resisted by the judges who are assigned to the session. As Judge Tierney wrote in 320 Elm Street LTD v. Stark LTD Home Cr., No. CV 9508-4146, 1996 Ct. Sup. 1414-TTT (Feb. 22, 1996):
 The superior court is a unified court and is divided into divisions or parts as established by the Rules of Court. The legislature established a separate Housing Sessions division but did not establish a separate court. The judges assigned to Housing Sessions routinely perform all the duties of all other superior court judges and take umbrage when a litigant refers to the Judicial District court as the "real superior court". The assignment to the Housing Session is made by the chief administrative judge, as are all judicial assignments, under the legislative power of Connecticut General Statutes Sec. CT Page 528 51-164t. The transfer from the Housing Session to the regular session of the Supreme Court and vice versa is a venue transfer, nothing more nothing less. State v. Thrall, 39 Conn. Sup. 347, 353 (1983).
In addition its concern that its claim here is not a "housing matter", the plaintiff contends that this action should not be transferred because it is a "prior pending action", based on its contention that it was commenced before the summary process action. "The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." (Internal quotation marks omitted.) Halpern v.Board of Education 196 Conn. 647, 652-53, 495 A.2d 264 (1985). The rule does not apply, however when the two actions are for different purposes or ends or involve different issues; seeFishman v. Middlesex Mutual Assurance Co., 4 Conn. App. 339,347-48, 494 A.2d 606 cert. denied, 197 Conn. 806, 499 A.2d 57
(1985); or where there is not a strict identity of the parties.Burns v. Grubbs Construction Inc., 174 So.2d 476, 478 (Fla.App. 1965).
The parties devoted considerable attention in their briefs and in oral argument to the question of which the two proceedings at issue here was in fact the prior pending action, with much of the debate focussing on whether the service of the notice to quit "commenced" the summary process action and therefore made it "prior". Although this; court is inclined to believe that for purposes of this doctrine, the better question is not when each case was "commenced" but rather when it first began to "pend", i.e. when it was actually filed in court, it concludes that the prior pending action doctrine is irrelevant to the question of transfer.
First, the two cases, although they both arise out of the same landlord tenant relationship, raise very different claims. Under the prior pending action doctrine, the pendency of a prior suit between the same parties brought to obtain the same end will generally render the latter suit amenable to dismissal. Halpernv. Board of Education, supra, 652; Henry F. Raab Connecticut.Inc. v. J. W. Fisher Co., 183 Conn. 108, 112, 438 A.2d 834
CT Page 529 (1981); Hatch v. Spofford, 22 Conn. 485, 494 (1853). When two separate suits are virtually alike, the second suit is deemed unnecessary, oppressive and vexatious. Halpern v. Board ofEducation, supra; Hatch v. Spofford, supra. To determine the applicability of the doctrine we must examine the pleadings to ascertain whether the actions are virtually alike. Halpern v.Board of Education, supra, 653. This case seeks enforcement of a right of first refusal, damages incidental to the defendants' purchase and sale transaction and CUTPA damages. The housing court matter is strictly a summary process matter seeking an eviction. The two actions are not virtually alike. Moreover this case involves a party (Sea Shell) which is not a party to the housing case. Thus independent of the question of which of the two cases is in fact the "prior" i.e. first, pending action, this is not a situation that implicates the prior pending action doctrine.
Moreover, the proper procedural vehicle for raising the doctrine is a motion to dismiss in the court where the subsequent action is filed. Halpern v. Board of Education, 196 Conn. 647,652 n. 4, 495 A.2d 264 (1985); Pepe v. Pepe, 38 Conn. Sup. 730
(1983). If the plaintiff wishes to raise the prior pending action doctrine in an effort to dismiss the summary process matter, it should do so in the housing session.
To summarize, the defendants' motions to strike are granted, and the defendant Sand Dollar's motion to transfer is also granted.
Jonathan E. Silbert, Judge