[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE (108)
CT Page 9715
The plaintiff's four count complaint against the defendants Yale University and Colleen Lim seeks damages based on his allegedly wrongful termination by the University. The plaintiff, an African-American male, was hired as the University's Senior Assistant Director of Athletics in May of 1995. Lim was his immediate supervisor. The plaintiff was terminated in January of 1996. Count one of the complaint alleges intentional infliction of emotional distress.
Count two alleges wrongful termination in violation of public policy. Count three alleges discrimination based on race and sex in violation of the Fair Employment Practices Act (FEPA), General Statutes Sec. 46a-60, and the fourth count is a claim under General Statutes Sec. 31-51q that the defendants violated the plaintiff's first amendment right to freedom of speech.
The plaintiff alleges that the defendants subjected him to harassment, humiliation and degradation during his employment, that his responsibilities were reduced, that he was denied the assistance of a work-study student, that he was given contradictory and inconsistent instructions, that he was told to work fewer hours than those he thought necessary to perform his job and that he was criticized when he could not do his work. He alleges that late in 1995, the defendants told him that "Yale was not interested in seeing any changes or improvements in his performance of his duties, but that he was `not a good fit' with the Yale-type of administrator and that he should leave." He further alleges that the defendants told him that he would be dismissed unless he agreed to a demotion and signed a "release" promising not to state or allege that he had been subject to discrimination by Yale and promising not to file any complaint with any state agency, federal agency or court concerning his treatment by Yale. When the plaintiff refused to sign the release, he claims, he was terminated from his employment on January 4, 1996.
The defendants have moved to strike all four counts of the complaint. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks CT Page 9716 omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novamatrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 986 (1992).
The first count alleges that the defendants' conduct leading to plaintiff's termination constituted the intentional infliction of emotional distress. To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove that:
 (1) the defendant intended to inflict emotional distress or knew, or should have known, that emotional distress was a likely result of his or her conduct;
(2) the conduct was extreme and outrageous;
 (3) the defendant's conduct caused the plaintiff's distress; and,
 (4) the emotional distress sustained by the plaintiff was severe.
Petyan v. Ellis, 200 Conn. 243, 253 (1986); DeLaurentis v. NewHaven, 220 Conn. 225, 266-67 (1991) (emphasis added).
"[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he had intended to inflict emotional distress, or even that his conduct has been characterized by `malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort". Thers v. Cohen, 31 Conn. Sup. 305, 308 (1973) [citing
Restatement (Second) of Torts, § 46 (1965)]. "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." Kintner v. Nidec-TorinCorp., 652 F. Sup. 112 (D. Conn. 1987); DeLaurentis v. New Haven,220 Conn. 225, 266-67 (1991); Bosco v. MacDonald,13 Conn. L. Rptr. 312 (Jan. 31, 1995) (West, J.). "[L]iability for intentional infliction of emotional distress requires `conduct exceeding all bounds usually tolerated by decent society of a nature which is especially calculated to cause and does cause, mental distress of a very serious kind'". DeLaurentis v. NewCT Page 9717Haven, 220 Conn. 225 at 266-67 (1991) (citations omitted). "Mere insult, indignities, or annoyances that are not extreme and outrageous will not suffice." Brown v. Ellis, 40 Conn. Sup. 165,167 (1984).
Whether a defendant's conduct satisfies the element of extreme and outrageous conduct is for the Court to determine in the first instance. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17
(1982); Ziobro v. Connecticut Institute for the Blind,818 F. Sup. 497, 502 (D. Conn. 1993); Collins v. Gulf Oil Corp.,605 F. Sup. 1519 (D. Conn. 1985). The plaintiff's allegations that his duties and responsibilities were reduced; that he was denied the assistance of a work-study student; that he was given contradictory and inconsistent instructions; that he was criticized for the length of time it took to do some projects; that he was denounced for failing to meet job expectations; that he was told that he was "not a good fit" as an administrator for Yale University; that he was told that he should leave his position; and that he was subjected to "a continuous pattern of harassment, humiliation and degradation" fall far short of the requisite level of extreme and outrageous conduct necessary to state a viable claim of intentional infliction of emotional distress.
The first count of the plaintiff's complaint is therefore stricken.
The second count of the complaint seeks damages for wrongful discharge.
The plaintiff, however, has failed to allege that his discharge violated an important public policy, a prerequisite for a wrongful discharge claim. Employment contracts for an indefinite period of time are generally presumed to be terminable at the will of either the employee or employer. Coehlo v.Posi-Seal Int'l, Inc., 208 Conn. 106, 117-18 (1988); Somers v. CooleyChevrolet, 146 Conn. 627, 629 (1959); Fisher v. Jackson,142 Conn. 734, 736 (1955). This rule reflects the long-standing philosophy that an employer has authority over its employees in order to protect the employer's managerial discretion. In Sheetsv. Teddy's Frosted Foods, Inc., 179 Conn. 471, 480 (1980), however, our Supreme Court carved out a narrow exception for employees who are discharged in violation of the mandates of an important public policy. The failure to allege that the discharge violates a state statute or constitutional provision or other CT Page 9718 articulable public policy may thus be fatal to a wrongful discharge claim. Morris v. Hartford Courant Co., 200 Conn. 676,680 (1986).
The mere allegation that the defendants required the plaintiff to sign a release in exchange for a promise to continue his employment does not rise to the level of a violation of public policy. An employer and employee should be allowed to negotiate their disputes, and a release of employment discrimination claims, even those based on race, gender or age, does not violate public policy when such a release is part of the negotiated resolution of an employment related dispute. Widenerv. Arco Oil and Gas Co., 717 F. Sup. 1211, 1215 (N.D. Tex. 1989). "To the contrary, public policy favors voluntary settlement of employment discrimination claims . . .". Widener, supra. See alsoBendle v. City of Tampa, 42 F.3d 633, 635 (11th Cir), cert.denied, 115 S.Ct. 2600 (1995) (employee may validly waive his Title VII — sex and age — claims if he knowingly and voluntarily consents to a release); Pierce v. Atchison, Topekaand Santa Fe Ry. Co., 65 F.3d 562 (7th Cir. 1995) (release of age and race discrimination claims found valid); Haniok v. AdvisoryCommittee, 935 F.2d 1360, 1365 (2d Cir. 1991) (waiver of ADEA claim valid if made knowingly and voluntarily) Frumkin v. IBMCorp., 801 F. Sup. 1030, 1041-44 (S.D.N.Y. 1992) (plaintiff validly waived ADEA claim); Carroll v. Primerica Fin. Serv. Ins.Marketing, 811 F. Sup. 1558, 1559 (N.D. Ga. 1992) (valid release of age discrimination claims); Reed v. Smithkline Beckman Corp.,569 F. Sup. 672 (E.D. Pa. 1983) (release of sex and race discrimination claims upheld); White v. General Motors Corp.,699 F. Sup. 1487 (D. Kan. 1988) (release barred claims for wrongful discharge and breach of implied contract). See also Albert Mendeland Son, Inc. v. Krogh, 4 Conn. App. 117, 121 (1985) (the settlement of disputes by informal processes serves the public interest as alternative to litigation); Blake v. Levy,191 Conn. 257, 264 (1983) ("the law favors settlements, which conserve scarce judicial resources and minimize parties' transaction costs"); Doherty v. Sullivan, 29 Conn. App. 736, 741 (1992) (compromise agreement free from fraud, mistake or undue influence is conclusive between the parties); Crociere v. Enfield Bd. ofEduc. 1993 WL 512484 (Conn.Super. 1993) (citing United StatesFidelity Guaranty Company v. New York, New Haven HartfordRailway Company, 101 Conn. 200 (1924) ("[t]he law favors a settlement of disputes").
Moreover, in Atkins v. Bridgeport Hydraulic,
CT Page 97195 Conn. App. 643, 644 (1985), the Appellate Court held that a violation of an important public policy alone may be insufficient to make out a cause of action for wrongful discharge.
 "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated."
Thus, the plaintiff must demonstrate that he is "otherwise without a remedy" before he may pursue a claim for wrongful discharge. The present plaintiff cannot show that he is without a remedy for his alleged termination for refusing to sign a release with regard to potential claims for sex and age discrimination because Connecticut Fair Employment Practices Act ("FEPA"), General Statutes Sec. 46a-60 (4), provides a statutory remedy to an employee if an employer discharges, expels or otherwise discriminates against any person because he has opposed any discriminating employment practice or filed an administrative complaint. As the plaintiff has a statutory remedy, he is precluded from bringing an action for wrongful discharge. "Superior Court cases and district court cases have fairly consistently held that neither a wrongful discharge nor a breach of implied covenant claim are available" where a plaintiff has adequate statutory remedies through which the public policies can be enforced. Faulkner v. Sikorsky Aircraft, a Div. of UnitedTechnologies Corp., et al, 11 Conn. L. Rptr. No. 8, 256 (May 2, 1994). See also Brothern v. Burndy, 16 CLT 45, at 36 (Sept. 24, 1990) (Fuller, J.); Reed v. Ritz Camera and Video Center,1989 CSCR 862 (Nov. 9, 1989) (Thompson, J.); Poulous, supra.
The reasoning of the Appellate Court in Atkins applies in the instant case. Atkins prohibits the plaintiff from recharacterizing a statutory violation under FEPA as one for wrongful termination. If the plaintiff has a statutory remedy available, he must pursue that remedy and prove the elements of the statutory violation; he may not allege a wrongful discharge. Since the plaintiff had available to him a statutory remedy under the Fair Employment Practices Act, he is barred from pursuing a claim for wrongful termination. Because he has neither alleged CT Page 9720 the violation of important public policy nor his having exhausted his statutory remedies, the plaintiff's wrongful discharge count is stricken.
The third count of the complaint alleges that the defendants violated Section 46a-60 of the Connecticut General Statutes by discriminating against him on the basis of his race and sex. The plaintiff, however, has failed to allege that he satisfied the statutory administrative procedures established by FEPA in order to pursue such an action.
Connecticut courts have held that a plaintiff is barred from pursuing an action under FEPA without first exhausting his or her administrative remedies. Atkins, supra; Town of West Hartford v.Operation Rescue, 726 F. Sup. 371, 380 (D. Conn. 1989) (administrative procedure, with appellate review, is the sole remedy for such a violation); Billing v. Stone WebsterEngineering Corp., 678 F. Sup. 984, 985 ( 1988) (sole remedy for violation of § 46a-60 is an administrative complaint, and the only method of invoking the superior court's jurisdiction is through an appeal from CHRO's determination); Napoleon v. Xerox,656 F. Sup. 1120, 1125 (D. Conn. (1987) (plaintiff may not circumvent FEPA by the assertion of a private right of action);Powell v. Feroleto Steel Co., 659 F. Sup. 303, 304-05 (D. Conn. 1986) (FEPA is a comprehensive, remedial statute with its own detailed enforcement scheme).
Complaints alleging sex or racial discrimination must initially be filed with the Commission on Human Rights and Opportunities ("CHRO") before filing an action in the Superior Court. Sullivan v. Board of Police Commissioners, 196 Conn. 208,218 (1985). In Sullivan, the Supreme Court of Connecticut held that an action under FEPA should be dismissed sua sponte when the plaintiff has not complied with the administrative scheme. Seealso, Osborn v. Rocklen Automotive Parts and Service, Inc.,4 Conn. App. 423 (1985); Davis v. Critikon, U.S. District Court, D. Conn., No. 95-CV-1694 (Sept. 20, 1996). The plaintiff's failure to allege that he exhausted his administrative remedies precludes any further action under FEPA, thereby depriving this Court of subject matter jurisdiction to hear the discrimination claim in the third count, and that count of the complaint is accordingly stricken.
The gravamen of the fourth count is that "[i]n terminating the plaintiff because of his refusal to sign the aforesaid CT Page 9721 `release' . . . the defendants subjected the plaintiff to discharge on account of his exercise of rights guaranteed by thefirst amendment to the United States constitution and by sections 3, 4 and 14 of article first of the constitution of Connecticut, although his refusal to sign the document did not substantially or materially interfere with his bona fide job performance or the working relationship between the plaintiff and the defendants."
The motion to strike the fourth count is grounded in the defendants' contention that it "fails to set forth a recognizable claim for infringement of the plaintiff's free speech rights pursuant to General Statutes. § 31-51q, because the plaintiff is not entitled to such protection on private property and he has not alleged any speech regarding a public, rather than a private, concern." In response, the plaintiff argues that he alleges that the first amendment right violated in the present case is the right of access to the courts, a matter of public concern because it would be exercised at the offices of the Commission on Human Rights and Opportunities, or in court, and not at Yale. In reply, the defendants contend that the right to file a claim or lawsuit is a fourteenth amendment right, not a first amendment right.
To support his argument that the defendants violated his right to access to the courts, the plaintiff relies on NAACP v.Button, 371 U.S. 415, 429-30, 83 S.Ct. 328, 9 L.Ed.2d 405
(1963) and California Transport v. Trucking Unlimited,404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). These cases support the proposition that there is a right to petition the government for redress found in the first amendment to the United States constitution. However, the right of access to the courts, as distinguished from the right to petition the government for redress of grievances "is founded in the Due Process Clause [of the fourteenth amendment] and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental rights." Wolff v. McDonnel,418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
General Statutes § 31-51q provides, in pertinent part, that: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the CT Page 9722 employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge. . . ."[1]
"In order to plead a violation of Section 31-51q, the plaintiff must allege: (1) that [he] was exercising rights protected by the first amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that [he] was fired "on account of" [his] exercise of such rights; and (3) that [his] exercise offirst amendment or equivalent state constitutional rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer." (Internal quotation marks omitted.) Sherman v.Sedgwick James of Connecticut, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 326150 (February 10, 1997. Melville, J.), quoting Daley v. Aetna Life Casualty, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 533693 (August 3, 1994, Sheldon, J.).
"In order to show that constitutionally protected rights are at issue under Sec. 31-51q, a plaintiff must allege that [he] was exercising [his] free speech rights as a citizen with respect to a matter of public concern. . . . The issue to be addressed is not simply whether the subject matter of the employee's complaint touches on a matter of public concern generally; the issue is whether acting as he did, an employee was acting as a citizen attempting to speak out on a public issue, or whether the employee was instead attempting to resolve a private dilemma relating to employment." (Internal quotation marks omitted.) Carrv. Devereux Foundation. Inc., Superior Court, judicial district of Litchfield, Docket No. 67464 (September 6, 1995, Pickett, J.), quoting Lund v. Stern Company, Inc.,13 Conn. L. Rptr. 77, 78 (November 3, 1994, Stengel, J.).
In the present case, the plaintiff's complaint does not allege that the defendants denied him access to the courts in violation of the first amendment. The complaint merely alleges that the plaintiff was terminated due to his failure to sign the "release". Furthermore, even if the court were to assume, arguendo, that the plaintiff attempted to exercise afirst amendment right, he has not alleged in the fourth count facts sufficient to demonstrate that he was attempting to speak out on a public issue. Rather, the underlying alleged speech involved in the fourth count of the complaint concerns the plaintiff's attempt to settle a private employment dispute with the CT Page 9723 defendants and therefore fails to alleges "facts provable in the complaint [that] would support a cause of action. . . ." Knightv. F. L. Roberts Co., 21 Conn. 466, 471, (1997). The fourth count of the complaint is therefore stricken.
Based on the foregoing reasons, the defendants' motion to strike all four counts of the plaintiff s complaint is granted.
Jonathan E. Silbert, Judge