[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
According to the allegations of the complaint, the plaintiff Carmen Sierra, is a former executive assistant to the defendant Nancy Wyman, Comptroller of the state of Connecticut. The. plaintiff was terminated in 1999. She alleges in this action that she was terminated as a result of her exercise of protected speech and that the termination was in violation of § 31-51q of the General Statutes. The defendants[1]
have moved to strike the complaint[2] essentially for two reasons: they claim that the speech in question was not of public concern, and thus not protected, and they claim that the plaintiff has not adequately alleged the elements of § 31-51q.
"The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted. Practice Book § 10-39. The motion admits all facts that are well pleaded; Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985); but does not admit legal conclusions or the truth or accuracy of opinions. Maloney v. Conroy,208 Conn. 392, 394, 545 A.2d 1059 (1988). On a motion to strike, the trial court's inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted. Practice Book § 10-39(a). A motion to strike is properly granted if the complaint alleges mere conclusions of law that are not supported by the facts alleged. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992)." Bennett v. Connecticut Hospice,Inc., 56 Conn. App. 134, 136-37 (1999). The complaint should be construed in the manner most favorable to sustaining legal sufficiency. Id., 137. CT Page 7728
The complaint alleges the following facts, which are deemed to be true for the purpose of this motion. The plaintiff Carmen Sierra, was hired as an executive assistant to the Comptroller, Nancy Wyman, in January, 1996, and continued in that capacity until her termination in September, 1999. In August, 1999, she requested and was granted a leave of absence through September 20 in order to pursue the elected office of City Treasurer for the city of Hartford. In the course of that campaign, on August 30, 1999, she appeared on a local public access cable program and fielded calls from viewers. One anonymous caller referred to "blood sucking Jews" and gave his support to Sierra. John O'Connell, a Republican city councilman, called in and said, "You're the same people who complain about racism and bigotry. . . . I'd like to ask candidate Sierra what she thinks about a comment like that, and what would her boss, Nancy Wyman, think about a comment like that?"
The anonymous caller called back and Sierra tried to respond to the situation. She apologized to viewers and said, "I want to share to Councilman O'Connell that I didn't do the joke. My boss, Nancy Wyman and I sit down and we talk about — we make jokes — we talk about my community, Puerto Ricans, and we feel very comfortable with that."
The next day reporters asked about the comptrollers attitude regarding Puerto Ricans and Sierra explained that on one occasion she and Wyman were running late and joked about being on Puerto Rican time. On September 1, Wyman allegedly saw a videotape of the program and said to the press that Sierra's employment was in jeopardy. On September 16, Sierra was instructed to resign by noon and if she did not comply, she would be terminated. She asked for an interview with Wyman, but instead was terminated, effective September 17. On September 28, 1999, a document was issued from the comptroller's office indicating that Sierra had been terminated for lack of work.
The plaintiff alleged that, in the program and in the subsequent questioning by reporters, she had been exercising her First Amendment rights and the comments were matters of public concern made in public fora. She alleged that the "remarks did not impair the Office of the Comptroller's ability to fulfill its duties." Finally, she alleged that the termination was motivated by her exercise of protected speech in violation of § 31-51q of the General Statutes.
As alluded to above, the defendants have moved to strike the complaint for two reasons. They argue that the complaint does not state a cause of action because the speech referred to in the complaint is not of public concern as defined by the case law, and they argue that the complaint does not allege, as required by § 31-51q, that the activity did not CT Page 7729 "substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer".
As a preliminary matter, it must be observed that both sides have relied on federal and state authorities for their respective arguments without distinguishing between the distinct causes of action presented. Although it is indeed true that review of federal authorities regarding actions brought pursuant to 42 U.S.C. § 1983 (federal civil rights actions) can be "instructive" in the analysis of action brought pursuant to § 31-51q of the Connecticut General Statutes because the actions are analogous; see Cotto v. United Technologies Corp., 48 Conn. App. 618,629 (1998); aff'd. 251 Conn. 1 (1999); the two causes of action are distinct vehicles. Although the vehicles may at times arrive at the same place, there is no compelling reason why the pleading elements and procedures must be identical. The procedures inherent in bringing and perhaps in defeating an action under § 1983 may well be different from the appropriate procedures in bringing this action. The frequently conflicting authority cited by the parties may generally be unraveled when it is analyzed in the context of the precise cause of action to which it applies.
I first turn to the issue of whether the speech in issue is appropriately deemed to be of public concern. All of the authority — whether in relation to § 1983 actions or § 31-51q actions — holds that the question of whether the subject matter of the speech in issue is a matter of public concern, as opposed to private grievance, is a matter of law for the court to decide. Daley v. AetnaLife Casualty Co., 249 Conn. 766, 782 (1999); Connick v. Myers,461 U.S. 138, 147-50 (1968). It is true, as argued by the defendants, that some of the federal authority appears to go further, and requires the court to apply the Pickering[3] test to determine whether the interests of the employee in free speech are outweighed by the interests of the employer in an effective workplace. In Lewis v. Cowen, 165 F.3d 154,162-64 (2d Cir. 1999), for example, it was stated that once speech raising matters of public concern is shown, then the government has the burden of demonstrating that the speech interferes with the applicable governmental operation. Context is important in the balancing test, and one factor is the nature of the employee's responsibilities. This balancing, in which the government need only show a likely interference with reasonable operations, was a matter of law for the court to decide, and the Second Circuit decided on the facts of Lewis that it was error to submit the balancing task to the jury. See also Connick v. Myers, supra.[4]
Relying on such authority, the defendants request the court, on the CT Page 7730 basis of the allegations of the complaint, to hold as a matter of law that the speech was not of public concern, either because it was not meant to be serious or because, in context, it was more an expression of private concern. The defendants claim that the entire analysis should be one of law for the court. See also Blum v. Schlegel, 18 F.3d 1005, 1012
(2d Cir. 1994). Our Supreme Court has held, however, that a somewhat different procedure is to be employed. In Daley v. Aetna Life CasualtyCo., supra, our court held that although the issue of whether the subject matter is of public concern is a matter of law for the court to decide, the issue of whether a particular statement addresses that public concern depends on the content of the statement, its form and the context in which it was made. The motivation — whether the statement is intended to address a public concern or whether it is intended to redress a private grievance or other private matter — is thus a factual issue for the jury to decide.
There undoubtedly are cases in which the complaint, construed most favorably to the plaintiff; does not allege speech which is of public concern. See, e.g., Emerick v. Kuhn, 52 Conn. App. 724 (1999). The allegations of this case, however, clearly state a subject matter which, as a matter of law, is of public concern. Although the statements themselves are not especially clear in their import, the subject matter, either the presence or the absence of racism in high public office, is a public matter. The context was public, and statements were made in the course of campaigning for public office, which is an activity which directly involves the public marketplace of ideas. As a matter of law, then, I find that the subject matter passes muster under § 31-51q.
The next step in the Daley analysis is whether the statements were intended to address a public concern or to further a private agenda. The defendants argue that I should find, as a matter of law, that the statements were not intended to address a public concern. If this were a case brought under 42 U.S.C. § 1983, perhaps I should undertake that analysis, though I may want a more complete factual presentation. In state law actions brought pursuant to § 31-51q, however, Daley
instructs that the necessary motivation and context are questions of fact to be determined by the finder of fact. In any event, I do not find that the complaint, construed most favorably to the nonmoving party, cannot support a finding that the statement qualifies under § 31-51q. The motion to strike is denied, then, insofar as it is based on the ground that the speech was not of public concern as a matter of law.
The second ground is subject to the same sort of analysis: the difficulties in the conflicting authorities are largely resolved by paying attention to which causes of action are being addressed. Those cases brought pursuant to 42 U.S.C. § 1983 of course do not require CT Page 7731 the lack of interference with job performance or the working relationship between the employer and the employee to be pleaded, because the statute does not mention such elements. Our law has evolved to include the common sense notion that such employment consideration of course are important, and the federal law has provided that these considerations are to be raised by special defense and then, presumably, balanced against theFirst Amendment rights of the employee. See generally Lewis v. Cowan, supra; Jeffries v. Harleston, 21 F.3d 1238 (2d Cir. 1994) (in which, perhaps significantly, the merits of the issue were decided after trial, rather than summarily).
State law under § 31-51q provides as follows, in relevant part:
 Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages.
Our case law has routinely stated the elements as follows:
"In order to plead a violation of Section 31-51q, the plaintiff must allege: (1) that [he] was exercising rights protected by thefirst
amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that [he] was fired "on account of" [his] exercise of such rights; and (3) that [his] exercise offirst
amendment or equivalent state constitutional rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer." (Internal quotation marks omitted.) Sherman v. Sedgwick James of Connecticut, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 326150 (February 10, 1997. Melville, J.), quoting Daley v. Aetna Life Casualty, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 533693 (August 3, 1994, Sheldon, J.).
Jeifress v. Yale University, 1997 Ct. Sup. 9714 (Silbert, J.) (1997). CT Page 7732
In Lowe v. Amerigas, Inc., 52 F. Sup.2d 349, 359 (D.Conn. 1999), the District Court for the District of Connecticut stated the elements which a plaintiff is required to prove in a § 31-51q case in virtually the same language, and the trial court in Daley v. Aetna Life Casualty, supra, apparently instructed the jury in much the same manner. Although a plausible argument can be made that the use of the language "provided that" suggests that the matter should be raised in defense, the language is also consistent with the need to prove the matter as an element of the cause of action. Contrary to the plaintiff's suggestion that the elements of the cause of action have only been stated in dictum, the court inSherman v. Sedgwick James, supra, based its decision granting the motion to strike the count based on § 31-51q of the General Statutes partly because the lack of interference with the employment relationship was not alleged.
The complaint in this case does not contain an allegation that the exercise of the protected speech did not substantially or materially interfere with her job performance or with her working relationship with her employer. The allegation that the speech did not impair the ability of the comptroller's office to fulfill its duties varies from the required pleading.[5] The motion to strike is therefore granted, with the understanding that the remedy of pleading over is presumably available.
Beach, J.